DONALD M. CARPENTER *v.* PRISCILLA CARPENTER
(10352)

SPEZIALE, C. J., HEALEY, PARSKEY, SHEA and GRILLO, Js.

Argued October 13—decision released December 28, 1982

*Stephen F. McEleney,* for the appellant (defendant).

*William C. Kroll,* for the appellee (plaintiff).

GRILLO, J. This appeal from the judgment rendered in a marital dissolution action raises the following procedural and substantive issues: (1) whether, pursuant to Practice Book § 3060B, the trial court's memorandum of decision was adequate; (2) whether the trial court failed to consider the criteria set forth in General Statutes §§ 46b-81 and 46b-82; (3) whether the trial court's decision was arbitrary and in abuse of its discretion; and (4) whether the trial court erred in excluding evidence, in the form of an employment contract, of the plaintiff's future wages for the next two years.[1]

The plaintiff, Donald Carpenter, instituted the present action in July, 1979, seeking dissolution of his twenty-one year marriage to the defendant, Priscilla Carpenter, as well as one-half of the equity in jointly held real property. The defendant subsequently filed a cross complaint, alleging adultery

---

[1] Although the defendant briefed the additional claim that the case was impermissibly referred to a state trial referee without first allowing the defendant an opportunity to be heard, this groundless issue was abandoned at oral argument. *Kroop* v. *Kroop,* 186 Conn. 211, 218–19, 440 A.2d 293 (1982).

by the plaintiff and seeking, inter alia, custody, support, alimony, and title to all real property. After a pendente lite order granting the defendant $190 per week of unallocated alimony and support, the case proceeded to a hearing on July 17, 1980, before the *Hon. Simon S. Cohen,* state trial referee, sitting as the trial court. At the time of the hearing the parties had one minor child who was six months shy of her eighteenth birthday. Immediately after the trial, which lasted approximately one and one-half hours, the court rendered an oral decision by which it dissolved the marriage and granted custody of the minor child to the defendant. The referee further awarded the defendant alimony and support of $190 per week until the minor child reached age eighteen, and thereafter alimony of $110 per week until July 17, 1983, when the family residence is to be sold and the proceeds evenly divided between the parties. Until that date the defendant has exclusive possession of the residence, and all personal property therein was ordered to become the property of the defendant.

On August 22, 1980, the court issued its written memorandum of decision, which repeated the previous oral orders without delineating the factual basis or statutory criteria which determined the judgment. The defendant thereafter filed a motion for rectification of appeal pursuant to Practice Book § 3082, seeking clarification of the factual and legal grounds relied upon by the trial court. In its memorandum on the motion for rectification the trial court stated that in making the awards it considered the following evidence: (1) the length of the marriage; (2) the finding that the parties were equally at fault for the irretrievable breakdown;

and (3) the ages, health, occupation and income of the parties, and the future employability and needs of the parties.

The defendant first attacks the sufficiency of the trial court's memorandum of decision and memorandum on the motion for rectification pursuant to Practice Book § 3060B, arguing that the brevity and absence of specific factual findings which characterize those memoranda effectively preclude appellate review. Although the trial court did not delineate the factual basis for its awards,[2] given the transcript, financial affidavits and other parts of the record available to us, the memoranda are sufficient to review the trial court's exercise of discretion. *Hall* v. *Hall*, 186 Conn. 118, 124, 439 A.2d 447 (1982). "This is so, in part, because of the limited review to which trial court determinations are subject in domestic relations cases"; *Scherr* v. *Scherr*, 183 Conn. 366, 368, 439 A.2d 375 (1981); and in part from our recognition that domestic relations cases often require factual conclusions concerning sensitive yet bitter conflicts between the litigants which are better left shielded from the parties and the public in order to preserve privacy and promote tranquil relations. *Scherr* v.

---

[2] Although the defendant properly moved to rectify the appeal pursuant to Practice Book § 3082, we note that where, as here, a party is dissatisfied with the trial court's response, proper procedure dictates immediate appeal of the rectification memorandum to this court via the motion for review. Practice Book §§ 3082, 3108; see *Dubicki* v. *Dubicki*, 186 Conn. 709, 715n, 443 A.2d 1268 (1982). It remains the appellant's responsibility to secure an adequate appellate record, and under normal circumstances we will not remand a case to correct a deficiency the appellant should have remedied. *Kaplan* v. *Kaplan*, 186 Conn. 387, 388 n.1, 441 A.2d 629 (1982).

*Scherr,* supra, 368 n.1. The memoranda, viewed collectively, therefore meet the minimum requirements of reviewability.[3]

The defendant next assigns as error the failure of the trial court to consider the statutory criteria for property division and alimony pursuant to General Statutes §§ 46b-81 and 46b-82 respectively.[4] "The court is not obligated to make an express finding on each of [the] statutory criteria." *Weiman* v. *Weiman,* 188 Conn. 232, 234, 449 A.2d 151 (1982). A ritualistic rendition of each and every statutory element would serve no useful purpose. While the trial court must consider the delineated statutory criteria, no single criterion is

---

[3] The defendant makes an additional attack on the trial court's oral decision immediately following the trial, arguing that one function of Practice Book § 3060B is to ensure that a minimum amount of review, deliberation and thought is undertaken prior to rendering a decision. Undoubtably, depending on the nature and complexity of the proceeding, varying degrees of deliberation will be necessary to render a judgment. It is, however, the peculiar function of the trier to determine the credibility and weight to be accorded the proffered evidence, the trial court having the advantageous opportunity to view the evidence in the totality of the circumstances. *Schaffer* v. *Schaffer,* 187 Conn. 224, 227, 445 A.2d 589 (1982). Under the circumstances of the present case, where the entire proceeding lasted approximately one and one-half hours and the only witnesses were the parties themselves, we see no reason why a trial court cannot render a decision while its conclusions concerning the demeanor, conduct and credibility of the witnesses, as well as the relative weight to be accorded documentary evidence, are still fresh in its mind.

[4] Under the provisions of both statutes, the trial court "shall consider the length of the marriage, the causes for the . . . dissolution of the marriage . . . the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate and needs of each of the parties . . . ." General Statutes §§ 46b-81 (c), 46b-82. In assigning marital property, the trial court must also consider the opportunity for each party to acquire future capital assets and income, as well as the contribution of each of the parties toward the value of their respective estates. General Statutes § 46b-81 (c).

preferred over the others, and the court is accorded wide latitude in varying the weight placed upon each item under the peculiar circumstances of each case. *Valante* v. *Valante,* 180 Conn. 528, 531, 429 A.2d 964 (1980).

Given these guidelines, we cannot conclude that the trial court misapplied the law. In its memorandum on the motion to rectify the appeal, the court stated that it considered the length of the marriage, the causes of the separation, the ages, health, occupation, income and future employability of the parties, and the parties' respective needs. The defendant admits that evidence concerning each statutory criterion was submitted to the court. While the defendant makes a broadside attack based upon the statutory elements not specifically noted by the court, consideration of occupation, income, future employability and needs of the parties implicitly requires consideration of vocational skills and the future ability to acquire capital assets, the two principal items which the defendant claims were ignored by the court. The trial court properly considered the statutory requirements of General Statutes §§ 46b-81 and 46b-82.

The defendant makes the additional claim that the referee's awards were arbitrary and in abuse of his discretion. Concerning this claim it is paramount to underscore, once again, the scope of appellate review in a domestic relations dispute. The conclusions which we might reach, were we sitting as the trial court, are irrelevant. *Gallo* v. *Gallo,* 184 Conn. 36, 44–45, 440 A.2d 782 (1981); *Koizim* v. *Koizim,* 181 Conn. 492, 498, 435 A.2d 1030 (1980). It is often the case that the appellant, in arguing abuse of discretion, would in reality

have this court vary either the weight placed upon specific statutory criteria or the weight placed upon documentary or testimonial evidence. *Fucci* v. *Fucci*, 179 Conn. 174, 183, 425 A.2d 592 (1979). Such an excursion by this court into the domain of the trier is unacceptable. *Schaffer* v. *Schaffer*, 187 Conn. 224, 227, 445 A.2d 589 (1982). On appellate review, the ultimate issue is whether the court could reasonably conclude as it did. *Koizim* v. *Koizim*, supra, 497.

The defendant first attacks the trial court's conclusion that the parties were equally at fault for the irretrievable breakdown of the marriage. Although there was a cross complaint alleging adultery, and there was evidence designed to show the plaintiff committed adultery, the plaintiff vehemently denied unfaithfulness and the court made no such finding. Moreover, the plaintiff testified that the defendant was argumentative, constantly woke him up at night, repeatedly locked him out of their residence, and continually threatened him with divorce proceedings. The trial court's focus was not to equate the conduct of the parties, but instead to determine whether the conduct of the parties contributed to the irretrievable breakdown of the marriage. In this sense, the court could have reasonably concluded that the parties were equally at fault for the breakdown of the marriage.

The gravamen of the defendant's argument concerning an abuse of judicial discretion centers upon the financial awards ordered by the court. The trial court is accorded wide discretion in allocating property and in setting the amount and type of alimony. *Pasquariello* v. *Pasquariello*, 168 Conn. 579, 583, 362 A.2d 835 (1975). She points to the twenty-one year marriage, the disparity in gross income, the

employability of the parties and the plaintiff's retirement benefits in characterizing the court's orders as arbitrary and an abuse of discretion.

These factors, which weigh in favor of a more substantial financial award to the defendant, are nevertheless offset by other evidence introduced before the court. A review of the transcript indicates that the defendant occupied a position as an inspector at a factory before and during the marriage, leaving this position for the last time twelve years prior to the dissolution to raise the children. She has subsequently worked as a cook, and although at the time of the dissolution she was earning only $77 per week as a cocktail waitress, she received this amount working only two or three nights a week. While the defendant indicated a desire not to work because of her age,[5] forty-nine years, nothing in the record before us reveals any reason why she could not resume work on a full-time basis. Further, although 1979 was a financially successful year for the plaintiff, his testimony revealed that he had recently been laid off for three weeks, during which his income was reduced to $144 per week of unemployment compensation.

The defendant's mortgage and tax payment amounts to $212 per month, more than adequately covered by her alimony award until the home is sold. At the date of the sale, the parties' youngest child will be six months shy of her twenty-first birthday.[6] Moreover, the parties' only substantial

[5] Cross-examination of the defendant:
"Q. You have no desire to work full time?
"A. No, because I am getting too old for that."
[6] We reject the defendant's additional claim that the court acted in contravention of both parties' intent by ordering the house sold after a three year period. Although the plaintiff indicated a desire to have the home remain in the defendant's possession until the

asset, their residence, will be equitably divided between them.[7] This is not a case where either party has substantial resources to draw upon; indeed, the financial affidavits of both the plaintiff and the defendant indicate weekly expenses exceeding weekly income.[8] The court could reasonably have concluded as it did.

The defendant's final assignment of error concerns the trial court's exclusion of the plaintiff's two year employment contract. The defendant attempted to introduce into evidence the collective bargaining agreement under which the plaintiff was employed which, she claimed, would indicate what the plaintiff would be earning during the following two years. The court perfunctorily refused to allow its introduction. (While the agreement was never presented to the court, it was reasonably apparent that the plaintiff had it in his possession in response to a subpoena duces tecum.)

children left home, got married, or moved away, it is impossible to translate such a desire into a precise period of time. The children may *never* move away, or, conversely, may have permanently left the household one week after the dissolution order. Under the circumstances, therefore, the court's three year exclusive possession period is reasonable.

[7] Although the defendant asserts that the court did not evenly divide the assets of the parties, the claim is without merit. While the plaintiff was awarded a trailer worth approximately $2000, the defendant received all personal property within the house. Further, the plaintiff offered testimony, which was not rebutted by the defendant, that the defendant sold the two cars owned by the parties during their marriage without his authorization, retaining the proceeds. The defendant also kept the approximately $1100 refund from the parties' 1978 tax return, apparently by forging the plaintiff's signature.

[8] In several material respects, the defendant seemed in a better financial position than the plaintiff at the time of the dissolution. Of necessity, the plaintiff lived in a trailer, while the defendant occupied the residence. The defendant drove a 1979 model car, the plaintiff a 1970 model. The defendant's savings account totaled $3327, the plaintiff's only $1110.

The failure of the defendant to provide this court with the contract as an exhibit for identification precludes a basis for review of the excluded document. *Drazen Lumber Co.* v. *Casner,* 156 Conn. 401, 405–406, 242 A.2d 754 (1968). Because the defendant failed to have the contract marked for identification, it is not part of the record and we are unable to review the ruling which excluded it from admission into evidence. *State* v. *Jones,* 166 Conn. 620, 627, 353 A.2d 764 (1974). Thus, the defendant is unable to demonstrate that the ruling was harmful. *State* v. *Dolphin,* 178 Conn. 564, 572, 424 A.2d 266 (1979).

Even if we assume, arguendo, that the excluded agreement would have been relevant to the plaintiff's earning capacity, there was abundant evidence in the testimony and financial affidavit of the plaintiff to allow the court to decide that issue.

There is no error.

In this opinion, SPEZIALE, C. J., PARSKEY and SHEA, Js., concurred.

ARTHUR H. HEALEY, J. (dissenting). I cannot agree with the majority's conclusion that the trial court properly considered the statutory requirements of General Statutes §§ 46b-81 and 46b-82[1]

---

[1] General Statutes § 46b-81 entitled "Assignment of property and transfer of title" provides in relevant part: "(c) In fixing the nature and value of the property, if any, to be assigned, the court, after hearing the witnesses, if any, of each party, except as provided in subsection (a) of section 46b-51, shall consider the length of the marriage, the causes for the annulment, dissolution of the marriage or legal separation, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties and the opportunity of each for future acquisition of capital assets and income.

in its disposition of the defendant's claim of error arguing that the trial court failed to consider the statutory criteria laid down by these two statutes.

Under date of October 30, 1980, the defendant filed her "Motion for Rectification of Appeal," pursuant to Practice Book § 3082, moving the trial court to rectify the appeal. In relevant part this motion sought rectification: "1) By preparing a written Memorandum of Decision setting forth the Referee's decision on the factual and legal issues raised by the case including, but not limited to, the factual and legal questions raised by Connecticut General Statutes Sections 46b-81 and 46b-82, and the conclusions as to claims of law raised by the parties together with factual basis of such conclusions. . . ."[2] The trial court thereafter filed its "Memorandum on Motion for Rectification of Appeal" which in part recited the following:

---

The court shall also consider the contribution of each of the parties in the acquisition, preservation or appreciation in value of their respective estates."

General Statutes § 46b-82 entitled "Alimony" provides: "At the time of entering the decree, the superior court may order either of the parties to pay alimony to the other, in addition to or in lieu of an award pursuant to section 46b-81. The order may direct that security be given therefor on such terms as the court may deem desirable. In determining whether alimony shall be awarded, and the duration and amount of the award, the court shall hear the witnesses, if any, of each party, except as provided in subsection (a) of section 46b-51, shall consider the length of the marriage, the causes for the annulment, dissolution of the marriage or legal separation, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate and needs of each of the parties and the award, if any, which the court may make pursuant to section 46b-81, and, in the case of a parent to whom the custody of minor children has been awarded, the desirability of such parent's securing employment."

[2] The motion also asked the referee to state whether he considered the case before him as a "limited contested dissolution" or "contested dissolution." In his memorandum on the motion for rectification he stated that he considered it a "contested dissolution."

"The Court in making the awards (see Memorandum of Decision) took into consideration the following evidence: 1. The length of the marriage. 2. The causes of the separation; 'a finding is made that the parties were equally at fault for the irretrievable breakdown.' 3. The ages, the health, occupations and income of the parties, and the future employability and needs of the parties. . . ."

The defendant maintains that the memorandum on her motion for rectification discloses that several criteria required by General Statutes §§ 46b-81 and 46b-82 were not considered. Placing these statutes next to the referee's memorandum reveals, she says, the absence of his consideration of the following criteria laid down by these statutes: "Station, vocational skills, estate of the parties, the desirability of the defendant as a custodial parent securing employment, the opportunity of each party for further acquisition of capital assets and income, and the contribution of each of the parties in the acquisition, preservation or appreciation of their estates." The majority explicitly points out that the defendant admits that evidence concerning each statutory criterion was submitted to the court. They also point out that while the defendant makes "a broadside attack based upon the statutory elements not specifically noted by the court, consideration of occupation, income, future employability and needs of the party implicitly requires consideration of vocational skills and the future ability to acquire capital assets, the two principal items which the defendant claims were ignored by the court."[3]

---

[3] While it is true that the defendant's brief does spend some time discussing the "two principal items" of "vocational skills and the future ability to acquire capital assets," I do not read her brief or understand her oral argument to retreat from her claim as set out earlier in this dissent.

This position of "implicit consideration" is seriously undercut by reading those criteria the referee himself expressly stated that he considered. There is no need to answer the implication that some of the criteria may overlap or even be the same. I call attention, however, to the tenet that "[i]t is a commonplace that '[n]o word in a statute should be treated as superfluous, void or insignificant unless there are impelling reasons . . . why this principle cannot be followed.' *General Motors Corporation* v. *Mulquin,* 134 Conn. 118, 126, 55 A.2d 732 [1947]." *Levin-Townsend Computer Corporation* v. *Hartford,* 166 Conn. 405, 409, 349 A.2d 853 (1974); see *McPhee* v. *McPhee,* 186 Conn. 167, 178, 440 A.2d 274 (1982) (*Healey, J.,* concurring). In construing a statute, the court seeks to ascertain the intent of the legislature "as it is expressed through the words actually used." *State* v. *Grant,* 176 Conn. 17, 20, 404 A.2d 873 (1978); *Schwab* v. *Zoning Board of Appeals,* 154 Conn. 479, 482, 226 A.2d 506 (1967). "[W]ords seldom have precise and unvarying meanings." *Jacques* v. *H. O. Penn Machinery Co.,* 166 Conn. 352, 359n, 349 A.2d 847 (1974); see *Doe* v. *Institute of Living, Inc.,* 175 Conn. 49, 57, 392 A.2d 491 (1978). The legislature, in both § 46b-81 and § 46b-82, did determine to include a number of criteria and I prefer to rest on the presumption that "the legislature had a purpose for every sentence, clause or phrase in a legislative enactment." *McAdams* v. *Barbieri,* 143 Conn. 405, 419, 123 A.2d 182 (1956). In short, all the criteria in each statute must be considered.

I agree that the trial court is not required to make express findings on each of the statutory criteria as we recently pointed out in *Weiman* v.

*Weiman,* 188 Conn. 232, 234, 449 A.2d 151 (1982).[4] The court, however, must consider all the statutory criteria; *Weiman* v. *Weiman,* supra, 234; although no single criterion is preferred over all the others. *Tutalo* v. *Tutalo,* 187 Conn. 249, 252, 445 A.2d 598 (1982); *Robinson* v. *Robinson,* 187 Conn. 70, 72, 444 A.2d 234 (1982); *McPhee* v. *McPhee,* supra, 172; *Valante* v. *Valante,* 180 Conn. 528, 530–31, 429 A.2d 964 (1980). In *Weiman,* in referring to § 46b-82 we quoted that statute including "vocational skills" as a factor that must be considered. *Weiman* v. *Weiman,* supra. We went on to say that with respect to property assignment under § 46b-81 a trial court, "in addition to the criteria listed in § 46b-82, must consider . . . 'the opportunity of each [of the parties] for future acquisition of capital assets and income.' " *Weiman* v. *Weiman,* supra. We did the same in *McPhee. McPhee* v. *McPhee,* supra, 171.

I realize that a trial court enjoys wide discretion in allocating property and making alimony awards; *Jacobsen* v. *Jacobsen,* 177 Conn. 259, 262–63, 413 A.2d 854 (1979); *Pasquariello* v. *Pasquariello,* 168 Conn. 579, 583, 362 A.2d 835 (1975); and that we properly recognize that trial courts have a distinct advantage over appellate courts in dealing with domestic relations matters. See, e.g., *Fucci* v. *Fucci,* 179 Conn. 174, 180–81, 425 A.2d 592 (1979). In declaring that dissolution, though statutory, is

---

[4] In *Posada* v. *Posada,* 179 Conn. 568, 572–73, 427 A.2d 406 (1980), we found that the trial court's detailed findings of fact amply supported its conclusion that it had "considered" the statutory criteria. In *Posada,* the trial court's memorandum of decision stated in part: "I have taken into consideration the factors enumerated in §§ 46-51 and 52 [now General Statutes §§ 46b-81 and 46b-82] . . . ." A-270 Rec. and Briefs, R. 17. The memorandum on the motion for rectification in the case now before us expressly excludes any such conclusion.

essentially equitable in nature we have said that "[t]he power to act equitably is the keystone to the court's ability to fashion relief in the infinite variety of circumstances which arise out of the dissolution of a marriage." *Pasquariello* v. *Pasquariello,* supra, 585; see *Robinson* v. *Robinson,* supra, 72. Accordingly, our review is limited in these cases. In order to conclude that a trial court abused its discretion, we must find that the court either incorrectly applied the law or could not reasonably conclude as it did. See, e.g., *Weiman* v. *Weiman,* supra, 234–35; *Beede* v. *Beede,* 186 Conn. 191, 194, 440 A.2d 283 (1982); *Koizim* v. *Koizim,* 181 Conn. 492, 498, 435 A.2d 1030 (1980).

For the reasons given, I conclude that the trial court incorrectly applied the law and, thus, committed error.

Therefore, I dissent.