[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The parties in this divorce case disagree on the distribution of their property, alimony, and child support. After considering the parties' claims, the court awards the plaintiff-wife sole ownership of the apartment building in Meriden and the house in Easton. The court awards the defendant-husband sole ownership of the two privately owned corporations for which he works and the real estate in Bridgeport and Trumbull. The defendant is ordered to pay $1,000.00 a month as alimony and $115.00 a month as child support.
The relevant facts are set forth in the following paragraphs. Henrietta Steczkowski and Boleslaw Steczkowski were married approximately twenty-two and one-half years ago in Ansonia, Connecticut. They have two adult children and one minor child, all who are issue of the marriage. The plaintiff lives in Easton with the minor child. The defendant resides in Trumbull.
The defendant's conduct caused the breakdown of the marriage. He drank excessively and, while intoxicated, was verbally and physically abusive to the plaintiff. He engaged in extra-marital affairs during the last years of the marriage. After the plaintiff initiated a divorce action in November of 1991, the defendant sought treatment for his alcoholism. He has not consumed alcohol since entering a treatment program in December of 1991. The plaintiff withdrew the 1991 divorce action after the parties reconciled in 1992. In 1993, the defendant told the plaintiff that he was seeing another woman CT Page 5665 and that he wanted a divorce. The plaintiff thereupon initiated this second divorce action.
Mrs. Steczkowski is forty-seven years old. She was born in Poland where she received a high school education. She immigrated to the United States with her first husband, who died in 1969. When she married the defendant in 1971, she was employed as a clerk at B. F. Goodrich Rubber Company where she earned $140 to $150 net a week. She also worked in her home as a hairdresser, earning $40 to $50 a week. Her assets at the time of the marriage consisted of a one-family house in Ansonia and $2,000. The house was worth $16,000 and was not encumbered by a mortgage. This house was sold in 1973 in the first of many steps toward the parties' acquiring assets which are worth approximately two million dollars.
Mrs. Steczkowski stopped working at B. F. Goodrich Rubber Company soon after the parties were married. During the marriage, she cleaned the family home and raised the parties' children. She also helped the defendant with office work during the early years of his electrical-contracting business. For the past two years, she has managed a thirty-nine unit apartment building which the parties purchased in 1986. While Mrs. Steczkowski's job skills are limited due to her long-time absence from the labor market, she appears to be quite capable of managing the apartment building. Mrs. Steczkowski resides in Easton in a house which the parties purchased in 1989. The parties' seventeen year old daughter lives with her. Their other two children return to the home during their college vacations. Mrs. Steczkowski would like to continue living in this house.
Mr. Steczkowski is forty-seven years old. He immigrated from Poland to the United States when he was nineteen years old. An earlier marriage ended in divorce. At the time the Steczkowskis were married, he was working at Carpenter Steel as a union electrician. For the first five years of the marriage, Mr. Steczkowski worked at Carpenter Steel and, during his off hours, developed an electrical-contracting business. After five years, he was laid off from Carpenter Steel. He thereafter engaged full time in the electrical-contracting businesses. He holds an E-1 and an E-2 electrician's license. He conducts his business under two corporate names, Steck Electrical Co., Inc. and Steck Communications, Inc. Over the years, Mr. Steczkowski has received substantial income from these businesses. In 1988, CT Page 5666 he received $114,000. In 1989, he received $737,550. In 1990, he received $656,201. In 1991, he received $252,400. In 1992, he received $56,400. At the present time, he is earning $600 a week or $31,200 a year.
Over the years, the Steczkowskis have purchased and sold various parcels of real estate. As they accumulated money from the electrical-contracting business, they invested the money in real estate. They presently own the properties described in the following paragraphs.
The Steczkowskis own a building at 2049-2059 Boston Avenue, Bridgeport, which contains four apartments and a store. The market value of the property is $266,000. The property is not encumbered by a mortgage. In 1992, the total rental income from the property was $25,000. After depreciation of $8,503, the taxable income was $16,497. The present gross rental income is $3,400 per month.
The Steczkowskis own a building at 1892 Boston Avenue, Bridgeport, which contains the defendant's business and one rental unit. The market value of the property is $124,000. It is not encumbered by a mortgage. In 1991, the rental income was $14,900. After deducting expenses of $3,319 and depreciation of $5,851, the taxable income for this property was $5,730. There was no rental income for 1992. The property is not presently rented.
The Steczkowskis own a house at 20 Crossbow Lane, Easton. Mrs. Steczkowski resides in this house. The market value of the home is $615,000. It is encumbered by an equity loan of $435,000. Hence, the parties' equity is $180,000.
The Easton home was purchased by the parties in 1989 for $825,000. They financed the purchase with a mortgage loan of $425,000. On January 26, 1991, they paid off the mortgage loan. On August 16, 1991, they arranged an equity line of credit. Mrs. Steczkowski withdrew $10,000 from this credit line to pay her attorney. Mr. Steczkowski thereafter withdrew the balance. He used the money to pay a mortgage loan on one of the Boston Avenue properties, a business loan, and income taxes.
The Steczkowskis own a house at 3061 Huntington Turnpike, Trumbull. Mr. Steczkowski resides in this house. The market value of the house is $265,000. It is encumbered by a first CT Page 5667 mortgage in the amount of $18,000 and an equity loan in the amount of $20,000. Hence, the parties' equity is $227,000. This house was the family home until the parties purchased the Easton house in 1989.
The Steczkowskis own a thirty-nine unit apartment building at 1095 Old Colony Road, Meriden, Connecticut. They purchased the apartment building in 1986 for $1,010,000. They financed the purchase with a $600,000 bank loan, which was secured by a first mortgage, and a $200,000 loan from the seller. They paid off these loans in the late 1980's with funds from the electrical-contracting businesses.
Since June 1992, Mrs. Steczkowski has been collecting rents from the thirty-nine unit apartment building and using the funds to pay expenses related to the building and her personal expenses. In 1992, she received gross rental income of $171,202. After deducting expenses of $84,330 and depreciation of $41,650, her taxable income was $45,222. The parties agree that Mrs. Steczkowski should receive the building as part of the distribution of the parties' assets. They disagree, however, as to the value of this asset. Mrs. Steczkowski claims the apartment building is worth $840,000. Mr. Steczkowski claims it is worth $1,200,000.
Both parties presented expert witnesses who testified as to the market value of the thirty-nine unit apartment building. After reviewing the appraisal reports and weighing the testimony of the experts, both on direct examination and cross-examination, the court finds that the market value is $930,000.
The Steczkowskis' other assets consist of 100 percent of the stock in Steck Communications, Inc., with a value of $260,000; 100 percent of the stock in Steck Electric Co., Inc., with a value of $142,000; automobiles; bank accounts; individual retirement accounts; defendant's pension through an electrical union; and a $10,000 life insurance policy of unknown cash value.
The parties' financial needs are set forth in their respective financial affidavits. The plaintiff's expenses are high. One reason her expenses are high is the need to pay the mortgage and other expenses or the home in Easton. This home was purchased just before the marital relationship deteriorated. CT Page 5668 The purchase loan was paid off. Just as the divorce proceeding was initiated, an equity loan of $437,000 was incurred. The court has considered these facts in formulating the financial awards.
The plaintiff seeks alimony of $12,000 a year and child support of $300 a week. She wants sole ownership of the thirty-nine unit apartment building in Meriden and sole ownership of the Easton house. She also wants the defendant to pay off the $437,000 equity loan on the Easton house.
The defendant agrees that the plaintiff should have the thirty-nine unit apartment building and the Easton house. He, however, wants to receive $300,000 from the plaintiff within two years to balance the distribution of the assets. He does not believe he should be required to pay alimony. In support of his position, the defendant argues that due to the plaintiff's income tax deductions and resulting income tax bracket, she will have a cash flow from the thirty-nine unit apartment building of approximately $90,000 per year. While there is merit to this argument, the defendant fails to take into account that the plaintiff must soon undertake substantial capital expenditures in order to maintain the apartment building. The building was damaged by severe winter weather. Preliminary estimates received by the plaintiff show that $47,250 is needed to repair the roof and $15,000 is needed to repair the balconies. The defendant also fails to apply the same cash flow analysis to the two buildings which he wants to keep. He will benefit from depreciation allowances, although not to the same extent as the plaintiff.
In deciding issues relating to alimony, counsel fees, and an equitable distribution of property, this court must consider the statutory criteria set forth in §§ 46b-62, 46b-81, and 46b-82
of the General Statutes. With respect to alimony and a division of property, the law to be considered has been stated as follows:
"[O]ur alimony statute does not recognize an absolute right to alimony. General Statutes § 46b-82; Thomas v. Thomas,159 Conn. 477, 486, 271 A.2d 62 (1970). `This court has reiterated time and again that awards of financial settlements ancillary to a marital dissolution rest in the sound discretion of the trial court.' Posada v. Posada, 179 Conn. 568, 572, 427 A.2d 406
(1980). Although the court is required to consider the CT Page 5669 statutory criteria of length of marriage, causes for dissolution, the age, health, station in life, occupation, amount and sources of income, assets and opportunity for future acquisition of assets of each of the parties; Fucci v. Fucci,179 Conn. 174, 179, 425 A.2d 592 (1979); no single criterion is preferred over all the others. In weighing the factors in a given case the court is not required to give equal weight to each of the specified items. Nevertheless, it is rather obvious that in making financial determinations the financial circumstances, both actual and potential, are entitled to great weight." Valente v. Valente, 180 Conn. 528, 530, 429 A.2d 964
(1980).
* * * *
"In fixing the nature and value of the property to be assigned, the court, in addition to the criteria listed in General Statutes § 46b-82, must also consider `the opportunity of each for future acquisition of capital assets and income . . . [as well as] the contribution of each of the parties in the acquisition, preservation or appreciation in value of their respective estates.' General Statutes § 46b-81 (c). While the trial court must consider each of these factors, no single factor is preferred over the others, and the court is accorded with wide latitude in varying the weight placed upon each item under the peculiar circumstances of each case. Carpenter v.Carpenter, 188 Conn. 736, 740-41, 453 A.2d 1151 (1982)."Elliot v. Elliot, 14 Conn. App. 541, 546, 541 A.2d 905 (1988).
* * * *
"There is no requirement in the applicable statutes which makes it mandatory that a trial court consider the federal tax implications of its financial orders." Seaver v. Seaver,10 Conn. App. 134, 521 A.2d 1053 (1987). Because the defendant presented evidence on the plaintiff's before-tax and after-tax cash flow, the court has considered the defendant's contentions on the potential tax consequences of its awards. See Powers v.Powers, 186 Conn. 8, 438 A.2d 846 (1982).
The court has reviewed the marriage in the context of the statutory criteria. The court finds the allegations of the complaint to be true. There is jurisdiction. The following orders are entered: CT Page 5670
1. The parties' marriage is dissolved on the grounds of irretrievable breakdown.
2. The defendant-husband shall during his lifetime pay as periodic alimony to the plaintiff-wife $1,000.00 per month until her death, remarriage, or co-habitation as defined in General Statutes § 46b-86 (b).
3. The parties shall have joint legal custody of the minor child, Diane. The child's residence will be with the plaintiff. The defendant shall enjoy rights of reasonable visitation.
4. The defendant shall pay child support of $115 per week.
5. The defendant shall provide medical insurance for the minor child during her minority and the plaintiff and defendant shall equally share the cost of any reasonable and necessary uninsured and unreimbursed health care expense of the minor child. Neither party shall cause any such health-care expense to be incurred without the consent and approval of the other party except in the case of an emergency or ordinary and routine check-ups and treatment.
6. The defendant-husband shall cooperate with the plaintiff-wife in helping her to obtain health insurance coverage pursuant to COBRA for a period of three years. The plaintiff shall pay the cost of such insurance.
7. The plaintiff-wife is awarded ownership of the following assets, subject to all encumbrances and liens affecting such assets:
A. The property at 20 Crossbow Lane, Easton.
B. The property at Old Colony Road, Meriden.
C. Plaintiff's 1988 Mercedes-Benz automobile.
D. The contents of the home in Easton.
E. Plaintiff's IRA accounts.
8. The defendant-husband is awarded ownership of the following assets, subject to all encumbrances and liens affecting such assets: CT Page 5671
A. The property at 3061 Huntington Turnpike, Trumbull.
B. The property at 2051 Boston Avenue, Bridgeport.
C. The property at 1892 Boston Avenue, Bridgeport.
 D. The defendant's 1989 Mercedes-Benz automobile and the defendant's 1984 BMW automobile.
 E. The stock of Steck Communications, Inc. and Steck Electric, Inc.
F. Defendant's IRA accounts.
G. Defendant's pension from the Electrical Worker's Union.
9 9. The defendant shall repay to the tenant's security account for the property at 1095 Old Colony Road, Meriden, the sum of $10,000 which he borrowed for his brother. The payment is to be made within thirty days from the date this decision is released.
10. The defendant shall pay $10,000.00 towards the plaintiff's legal fees incurred in connection with this case.
Judgment shall enter in accordance with the foregoing.
GEORGE N. THIM, JUDGE