[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is a limited contested dissolution of a marriage between the parties which took place on June 10, 1984 at Danbury, Connecticut. The plaintiff's maiden name was Maria Casas. It was the first marriage for the defendant and a second marriage for the plaintiff. No minor children were born to the wife issue of this marriage. The plaintiff had one child, Carmen, born to her of her prior marriage who was adopted by the defendant in 1985. Carmen Bemis has reached the age of majority. The plaintiff has resided continuously in the State of Connecticut for at least twelve (12) months preceding the filing of this action returnable to the court November 17, 1993. The court will enter a dissolution of the parties' marriage on the grounds of irretrievable breakdown.
The plaintiff is forty-three (43) years of age and in good health. The defendant forty-nine (49) and suffers from arthritis, hypertension and high blood pressure. The latter conditions are exacerbated by stress.
The parties met in 1981 commuting into New York City on the train. At the time of the marriage, Ms. Bemis was employed by the New York Times as secretary to the marketing director earning approximately $30,000. Mr. Bemis was employed by Citibank earning approximately $52,000. After the marriage, they both continued to CT Page 7295 commute together from Danbury where they resided with the then minor child, Carmen, in a home which the defendant had purchased prior to the marriage in 1977 for $71,500. In addition to the fully furnished real property, Mr. Bemis had cash and stock of approximately $40,000, two Stobart paintings, one a gift from the plaintiff, and an automobile.
At the time of the marriage, the plaintiff owned New York Times stock worth approximately $21,000; $9,000 from a savings plan with her employment; and IRA's funded by the defendant worth approximately $2,000.
In January of 1987, tired of the long commute to New York City, the plaintiff left her job and matriculated at Western Connecticut in the study of marine biology. She received her bachelor's degree in December of 1989. She had previously received her first bachelor's degree in May of 1984, graduating just prior to the marriage. Ms. Bemis indicated that the defendant was supportive of her decision to leave her job and return to school in 1987, but she later learned that he was somewhat resentful that he had to become the primary support of the whole family. She conceded that these concerns were not unreasonable as Carmen was then still in high school and contemplating college. At the time she terminated her employment with the New York Times, she was earning approximately $35,000.
During the period that she attended Western Connecticut, Ms. Bemis worked twenty (20) hours a week in the laboratory, compensated at approximately $4 per hour, and tutored students at the rate of $5 per hour. After her graduation in 1989, she took a part-time job at G. Fox Co. until April of 1990, when she began to work full-time at U.S. Geological Survey in Hartford, commuting daily from Danbury. In January of 1991, she began graduate school at the University of Rhode Island School of Oceanography. She received a fellowship which covered all of her tuition and educational costs plus $10,000 during the school year and an additional $5,000 in the summer to work. Ms. Bemis received her master's degree in May of 1993. While attending graduate school, she lived in Rhode Island during the week, generally returning to Danbury on Thursday night, and returning to Rhode Island on Monday morning.
The plaintiff has been employed at the University of Rhode Island since September of 1993 as a Marine Research Associate. Her salary was approximately $27,000. In November of 1994, she CT Page 7296 received a promotion and currently earns a base compensation of $31,167. She also receives "sea pay" which had been an additional $1,500 to $2,000 the previous year — based upon thirty (30) days at sea. She estimates that she will be at sea this year for thirty (30) to forty (40) days. She also is entitled to compensatory time. Ms. Bemis resides in a rented apartment in Rhode Island. Since she received her master's degree, the plaintiff has been self-supporting in Rhode Island, and her current income exceeds expenses. She reflects a Master Card debt of $4,100 on her financial affidavit which relates to attorney's fees for this action, and $5,600 which she estimates as the total expenses for Carmen's June wedding, some of which were already paid.
Mr. Bemis commenced his current employment at Marine Midland Bank in October of 1984 at a starting salary of $51,000. Continuing the daily commute between Danbury and New York City, he currently holds the position of vice president of sales and marketing at a base salary of $91,000. His 1994 bonus was $3,500, which was the first bonus he has received in four years. Mr. Bemis has no current liabilities. The expenses reflected on his affidavit slightly exceed his net salary.
The parties had a joint checking account during the marriage, but the plaintiff generally deposited her earnings in a separate account. Family finances were not used to pay for her educational expenses.
Carmen's educational costs were approximately $42,000. The proceeds from the sale of the plaintiff's New York Times stock were used toward this expense.
The defendant covered Carmen on his medical insurance available through his employment through 1994. Now that she is no longer a student, that coverage is not available but he has purchased a separate policy to continue her coverage.
The parties' assets at the time of trial consisted of the following: Merrill Lynch joint cash management account $13,120; 13 John Stobart paintings worth approximately $16,000 to $17,000 before the deduction of any gallery commission; 1,000 shares of UNILAB stock work approximately $4,000; 315 shares of LOTTERY ENT. stock worth approximately $1,300; the husband's 401K plan at Marine Midland Bank worth approximately $71,000; the husband's IRA account at Merrill Lynch worth approximately $53,000; the CT Page 7297 wife's IRA at Merrill Lynch worth approximately $22,000; two Nissan automobiles of approximately equal value; the wife's individual checking and savings accounts worth approximately $1,800; the husband's checking account with a balance of $2,346; the husband's American Can retirement plan which will pay him $136 per month at age sixty-five (65); and the real property located at 34 Ole Musket Lane in Danbury with equity of approximately $180,000.
Mr. Salvatore Pandolfi testified at trial regarding the value of the real property at the time of the marriage. Although he is not a certified appraiser, he is familiar with the El Moro neighborhood where the home is located. He indicated that the houses in El Moro are similar and that there are only three or four basic models. After reviewing information available in 1984 for actual sales similar to the subject property, he gave his estimate as to the value in 1984 of $135,000 plus or minus 5 to 6 percent. As previously indicated in this decision, the house was owned by Mr. Bemis prior to the marriage. Although the plaintiff testified that she had "put a lot of herself" into the home, the evidence presented showed no activities or improvements that would have resulted in any appreciable appreciation in value of the home. Accordingly, the court finds that any increase in value of the home was due primarily to changes in the real estate market.
The trial of this matter was remarkable in that the animosity which usually surfaces in the course of a contested matter was totally absent. Both parties are extraordinarily decent individuals who spoke of each other with the utmost respect, even when describing the causes for the breakdown of the marriage. There were some disputes regarding financial matters. Lack of effective communication and involvement were also evident. The plaintiff testified that she did not really know what her husband does at Marine Midland Bank. The defendant testified that while his wife was furthering her education, he felt "left out" and fell last in her list of priorities. He was concerned with the state of the marriage at the time Ms. Bemis began pursuing her master's degree and did not know if their relationship could withstand it. The parties' weekday separations, during Ms. Bemis' time in her master's program, undoubtedly contributed to the already strained situation, despite her sincere efforts to compensate for her absences during the long weekends the parties were together. Further difficulties revolved around their differences in the rearing of Carmen in her teenage years. The CT Page 7298 plaintiff felt that she was always in the middle and sometimes as if she were being torn apart. The parties went to counseling together in 1993 and, at the defendant's suggestion, Carmen attended also. According to the defendant, after three sessions, the plaintiff was very uncomfortable, did not agree with what the counselor suggested and refused to go to further sessions. The parties, however, continued to try to work to resolve the problems in their marriage. Unfortunately, they were unsuccessful in those attempts but they are to be commended for the dignity with which they disagree.
The plaintiff has requested an equal division of the parties' IRA's and the husband's 401K, the cash assets and stock holdings, and one-half of the appreciation in value of the real property from the date of its purchase in 1977. She also requests alimony in the amount of $19,800 per year for a period of five years.
The defendant suggests that the plaintiff receive one-half of the appreciation in the value of the home from the date of the marriage. Regarding the retirement accounts, the defendant suggests that 25 percent of the total IRA's, calculated as representing a combination of the husband's rollovers, pre-marriage contributions, and contributions to the wife's IRA's, be returned or retained by him with the balance divided equally between the parties. The defendant suggests that his 401K plan be divided two-thirds (2/3) to the defendant and one-third (1/3) to the wife. On the issue of alimony, the defendant's position is that the wife is self-supporting and has voluntarily left her previous employment and, therefore, should not be entitled to any alimony.
In dividing and/or assigning property, the court must consider the liabilities of the parties, the opportunities for each for future acquisition of capital assets and income, and the contribution of each of the parties in the acquisition, preservation or appreciation in value of their respective estates. Dubicki v. Dubicki, 186 Conn. 709, 714-15; Corbin v.Corbin, 179 Conn. 622, 624. The court is left to its broad discretion in dividing property so long as it considers all relevant statutory criteria. It is not obligated to make express findings on each and is not required to give equal weight to each in determining an award. No single criteria is preferred over the others and the weight placed on each is determined upon the circumstances of each case. Debowsky v. Debowsky, 12 Conn. App. 525,526-27; Carpenter v. Carpenter, 188 Conn. 736, 740-41; CT Page 7299Weiman v. Weiman, 188 Conn. 232, 234.
After considering all of the relevant statutory criteria, the property of the parties is divided as follows:
The total sums in the parties' respective I.R.A. accounts shall be added together. The husband shall be entitled to the sum of $10,600 off the top, and the remaining balance shall be divided equally between the parties. The husband's 401K plan shall be divided two-thirds (2/3) to the husband, one-third (1/3) to the wife. The court will retain jurisdiction to effectuate the division of these retirement assets.
With regard to the Stobart artwork:
The husband shall retain the one work gifted from the wife and the one work which he owned prior to the marriage. The wife shall retain the one work gifted from the husband. The balance of the Stobarts shall be divided equally between the parties by alternate selection with the husband making the first selection. At the wife's option, the husband may purchase the five works to which she is entitled pursuant to this division.
Each party is to retain his or her respective individual checking and/or savings account. The joint Merrill Lynch account and the UNILAB and LOTTERY ENT. stock shall be divided equally between the parties. The wife is awarded the 1991 Nissan automobile. The husband is awarded the 1992 Nissan automobile.
The wife shall be entitled to the wooden table and chairs, student desk, bookcase, books and a share of kitchen utensils. She shall be responsible to remove same from the marital domicile within sixty (60) days of the decree of dissolution.
The husband shall pay to the wife, by way of lump sum property distribution, the sum of $30,000, payable in two equal installments, the first due within ninety (90) days of this decree, and the second due one hundred eighty (180) days post dissolution. The plaintiff shall be responsible for the debts listed on her financial affidavit.
In determining whether alimony shall be awarded, and the duration and amount of the award, the court is mandated by section 46b-82 of the General Statutes to consider the length of the marriage, the causes for the dissolution, the age, health, CT Page 7300 station, occupation, amount and sources of income, vocational skills, employability, estate and needs of each of the parties, as well as the division of property.
The plaintiff requests an award of what is, in effect, rehabilitative alimony. The unambiguous purpose of rehabilitative alimony is to allow the recipient spouse to attain self-sufficiency.O'Neill v. O'Neill, 13 Conn. App. 300, 313. Ms. Bemis, during the later years of the marriage, attained both a bachelor and a master's degree in a field which she selected and has successfully attained gainful employment in that field which she enjoys. The financial affidavit which she presented to the court reflects the attainment of self-sufficiency. In consideration of that, as well as the length of the marriage, the ages and health of the parties, the amounts and sources of their income, the expenses reflected on their respective financial affidavits, as well as the obligations and the division of property pursuant to this decision, no alimony shall be awarded to the plaintiff.
Each party shall be responsible for his or her respective counsel fees.
The plaintiff's maiden name of Maria Casas is restored.
Dennis, J.