[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION 
The parties were married over 30 years ago, on February 15, 1965. The plaintiff is 52 years old. The defendant is 54 years old. This is a second marriage for the plaintiff.
In 1964, the plaintiff was renting an apartment from the defendant's parents. At that time, she was separated from her first husband but still married. The plaintiff had graduated high school in 1961. She had a child of that marriage, Gina, who was born in 1962. Shortly after the parties' marriage, the defendant adopted Gina, after her biological father's parental rights were terminated. Besides Gina, the parties have two other children of the marriage: Debby who is no longer a minor, and Alfred, Jr. born July 5, 1980. Alfred, now 15 years old, lives with his father.
One party has resided in the State of Connecticut continuously for more than one year prior to the bringing of this action. No other minor children other than Alfred, Jr., have been born to the wife since the date of the marriage. None of the parties have been a recipient of public assistance. As stated below, the marriage between the parties has broken irretrievably with no reasonable hope of reconciliation.
From the time of the marriage to the date of hearing, Mrs. Riccitelli has been a homemaker. Since 1965, her total time working outside the home has not exceeded two months. She has no job skills for the marketplace. Her health is fair. She has a thyroid condition which is treated with medication, osteoporosis which is treated with calcium therapy and also, is on a regimen of hormone replacement therapy. Further, Mrs. Riccitelli has mitral valve prolapse, pericardial infusion and an irritation of CT Page 1404-A the small intestine. Also, Mrs. Riccitelli has an undiagnosed nervous condition which results in extreme emotional upset which she calls panic attacks with hyperventilation. These occur when she feels emotionally stressed or upset.
Mr. Riccitelli is a truck driver for Mobil Oil, driving tankers. He is presently not working, and has not for a year, as a result of an injury that he described as carpel tunnel syndrome. He says it is worse since he has had corrective surgery in the past year. Mr. Riccitelli has an eighth grade education. Early in the marriage he was training and working as a professional ballroom dancer. He abandoned this field when he settled into family life in Connecticut, about the time of Mrs. Riccitelli's pregnancy with Debby. Other than the carpel tunnel syndrome, Mr. Riccitelli has no other health problems. He has been on short-term disability from Mobil for one year, collecting $339 per week gross, $243 per week net. These benefits expire January 16, 1996. He is seeking to qualify for a 12 week extension while he applies for either long-term disability, retirement or a hybrid of the two. The expected benefits for each of these three options was placed in evidence. Mr. Riccitelli believes that he will not be able to return to work at Mobil as a truck driver.
The parties own a home at 27 Meadowbrook Drive, North Branford. The lot was purchased for $75,000 which came from the defendant's inheritance from his family. Approximately $25,000 of additional inherited funds as well as the net proceeds of the sale of the parties' previous home in Clinton were utilized to build the Meadowbrook house. Both parties value the house at $260,000 on their financial affidavit and that is the value found by this court. There is no mortgage on the premises. However, it has unpaid real estate taxes of approximately $7,800, a sewer lien of approximately $1,700 and $30,000 in liens from subcontractors presently in litigation. It is not clear from the evidence what the parties' liability, if any, is for those $30,000 in subcontractor liens.
The parties also have six cemetery plots. The plaintiff's mother is buried there. The defendant's family is buried approximately 1/4 mile away in the same cemetery. Notwithstanding the layout of the parties' family remains, Mr. Riccitelli seeks these plots because of their financial value.
Mr. Riccitelli has an Employees Savings Plan (ESOP) at Mobil. CT Page 1404-B It has savings account and 401K facets to it. Its value is approximately $75,000, free and clear, the previous loan having been paid off.
Mr. Riccitelli also has a long-term disability plan and a retirement plan at Mobil. The benefits available to him are contained in Exhibit C. He has not elected between these options. If he elects retirement, he may do so with or without long-term disability. Correspondingly, he can elect long-term disability with or without retirement. The court finds the benefits to be substantially in accordance with Exhibit C.
The parties bickered about many things during the marriage including finances and Mrs. Riccitelli's desire to socialize outside of the home. Undoubtedly, Mrs. Riccitelli's panic attacks caused stress on the marriage. It is this condition that Mr. Riccitelli believes caused the breakdown of the parties' marriage. This is notwithstanding his testimony that these incidents have occurred regularly since two weeks after marriage and then for 26 years thereafter, and, he took no steps in that time period to initiate a dissolution of marriage action. The parties did not have a perfect union but it was one in which they were willing to stay married. As Mr. Riccitelli summed up his position, "I wasn't looking to get rid of my wife." Nor was Mrs. Riccitelli looking to divorce him. Then, she was told by Gina, that Mr. Riccitelli had had sexual relations with her, Gina, on two separate occasions. This was the reason Mrs. Riccitelli threw him out of the house and commenced these divorce proceedings.
The return date of this action is June 29, 1993. On February 22, 1995, certain orders of the court, Pittman, J. were entered regarding shares of Mobil stock, which Mr. Riccitelli valued on his financial affidavit, at that time, at approximately $73,000. The orders entered by agreement of the parties, were that Mr. Riccitelli would sell sufficient amount of Mobil stock to give himself $5,000, his wife $5,000 and pay the capital gains tax on the sale; the balance of the stock was to be held "in escrow" by him. It came to pass, that Mr. Riccitelli sold all of the Mobil stock; he gave $5,000 to his wife and kept all of the rest of the money. A contempt proceeding was held on October 25, 1995 before the court (Munro, J.). At the time of the hearing he had $36,000 remaining. There was a finding of contempt. Mr. Riccitelli was ordered to transfer the $36,000 to his wife. He was ordered solely responsible for all taxes resulting from the sale of the Mobil stock. Mrs. Riccitelli's retention of the $36,000 was not CT Page 1404-C to be considered as a marital asset at the final hearing on which this decision is written. Further, Mrs. Riccitelli's claim for attorney's fees arising out of the contempt was continued to the final hearing and are a part of her present claim.
At the time of the final hearing, Mrs. Riccitelli lives in the marital home. Mr. Riccitelli resides in a condominium unit with his girlfriend, with whom he shares expenses. The parties' minor child, Alfred, currently lives at his father's home. Mrs. Riccitelli does not seek to disturb this at this time. She fears to do so will result in Mr. Riccitelli further alienating her son from her, given his age of approximately 15 years.
Much of the testimony at trial focused on each of the parties' respective claims as to fault for the breakdown of the marriage. The plaintiff, unequivocally, claims that her husband's sexual intercourse with their daughter destroyed their marriage. The defendant repeatedly attempted to diminish these acts, emphasizing that Gina was adopted and not his biological daughter and claiming they were isolated incidents to be explained away by excess alcohol consumption on one occasion and mutual depression and emotional need on the other occasion. The defendant feels he owes no apology for his conduct, and, at best felt guilty after the first time.
The defendant's conduct has long been barred societally, as a matter of law and morality. In, "The Acts and Laws of His Majesty's Colony of Connecticut In New England, Revision of 1702" there is "An act to prevent Incestuous Marriages which bars "carnal copulation with any woman, who is within the degrees before recited in this Act. . . "which include" . . . Daughter, Wives Daughter", Singh v. Singh, 213 Conn. 637, 644 (1990). There are moral parameters that socialized people must abide by and live within if we are to preserve our civilization.
Further, defendant lied to this court about the reason plaintiff threw him out of the house. On the first occasion he replied to plaintiff's counsel that it was not what he was told. Then, for his attorney, he recalled suddenly, that his wife yelled that he had raped Gina. Incredibly, a few minutes later he could not recall this when questioned again by his wife's attorney.
Truth, compliance with a court order and social mores have proven no obstacle to Mr. Riccitelli doing or saying whatever he CT Page 1404-D deemed appropriate to gratify himself. Mr. Riccitelli shoulders the entire burden for the destruction of this marriage.
"The fact-finding function is vested in the trial court with its unique opportunity to view the evidence presented in a totality of circumstances, i.e., including its observations of the demeanor and conduct of the witnesses and parties, which is not reflected in the cold, printed record. . . ." Schaffer v.Schaffer, 187 Conn. 224, 227 (1982).
The court has considered all of the credible evidence and the statutory criteria contained in Connecticut General Statutes
§§ 46b-81 and 46b-82. "A ritualistic rendition of each and every statutory element would serve no useful purpose." Carpenterv. Carpenter, 188 Conn. 736, 740 (1982).
It is ordered:
The marriage between the parties is dissolved. The parties shall have joint legal custody of Alfred. His primary residence is with his father, subject to liberal and reasonable rights of visitation in his mother.
The defendant's interest in the premises at 27 Meadowbrook Drive, North Branford, CT are ordered set over entirely unto the plaintiff. The defendant shall execute a quit claim deed to the plaintiff for the premises within thirty days of final judgment. If he fails to do so it is decreed that the property shall transfer to the plaintiff by operation of the provisions ofConnecticut General Statutes § 46b-81 (b).
The entire contents of the premises of 27 Meadowbrook Drive, North Branford, including all of the personalty, furnishings and jewelry (except the items provided for hereinafter) are ordered the sole property of the plaintiff.
The following assets listed on the plaintiff's financial affidavit: the 1991 Toyota Wagon, the Branford Savings checking account and the $24,500 remaining from defendant's sale of the Mobil stock are ordered the plaintiff's solely.
It is ordered that the defendant shall convey to the plaintiff all of his right, title and interest in and to the six cemetery plots (and any headstones thereon) to the plaintiff. CT Page 1404-E
The defendant shall be the sole owner of the 1978 Cadillac, the $300 U.S. Savings Bonds and his Shawmut Savings Account, all shown on his financial affidavit.
It is ordered that the defendant may retrieve from the marital home, with 14 days notice to the plaintiff, his childhood train set, to be accomplished within ninety days.
By Qualified Domestic Relations Order (QDRO) the plaintiff is ordered the owner of 60% of the value of the defendant's Mobil 401K Retirement Plan valued as of January 18, 1996 (If a quarter ending/quarter beginning date is required by the Plan, alternatively December 31, 1995/January 1, 1996 shall be used as the valuation date). All accruals (or losses), by way of dividends, interest income, stock splits, or reinvestment attributable to the plaintiff's 60% are ordered the plaintiff's and to be included in the QDRO. The court retains jurisdiction over the QDRO for purposes of its effectuation in accordance with the tenor of this judgment.
The court finds Mrs. Riccitelli has no earning capacity at this time and therefore makes no order of child support to be paid by her. The defendant, Mr. Riccitelli is ordered to maintain health insurance for the benefit of the minor child.
The court orders Mrs. Riccitelli to remain and be designated Mr. Riccitelli's contingent annuitant on the retirement plan and long-term disability plan and further orders that he must elect the contingent annuitant option of the plans. There is no order however requiring him to pick between Option 1, 2 and 3 of Exhibit C; that is, it is his choice whether to elect one of the three at the plan appropriate time(s).
The court orders that Mr. Riccitelli is the sole owner of 50% of his Mobil pension and long-term disability plan. By Qualified Domestic Relations Order, Mrs. Riccitelli is the owner of 50% of the defendant's Mobil pension and long-term disability plan valued as of January 18, 1996. The court retains jurisdiction over this issue for purposes of effecting this order in accordance with its tenor.
At the present time, as of trial, Mr. Riccitelli has no income. His financial affidavit reflects short-term disability which has now ended. He has not yet been qualified for long-term CT Page 1404-F disability or elected retirement. There has been no testimony to suggest he is unemployable as a result of his injury. He has not yet sought other employment. The court orders Mr. Riccitelli to pay Mrs. Riccitelli alimony in the amount of $1.00 per year. He is to provide written notice to Mrs. Riccitelli immediately upon finding employment, election to retirement benefits, and/or qualification for any long-term or short-term disability benefits. He is to provide Mrs. Riccitelli all W-2's, 1098's, and 1099's, by February 15 annually and the first two pages of his Federal and State Tax return by April 15 (or August 15 if he files late) annually.
Each party is ordered responsible for the debts shown on their respective financial affidavits. They are to indemnify and hold the other harmless regarding the same.
The court orders $500 counsel fees of the plaintiff to be paid by the defendant for time expended on the contempt proceeding. No further order of counsel fees are made for to do so would disturb the structure of these court orders.
Lynda B. Munro, Judge