DONALD M. McPHEE *v.* CAROLYN G. McPHEE

HEALEY, PARSKEY, ARMENTANO, SHEA and COVELLO, Js.

Argued November 13, 1981—decision released February 2, 1982

*Mary Ellen Wynn,* for the appellant (defendant).

*Richard L. Goldblatt,* for the appellee (plaintiff).

ARMENTANO, J. This appeal raises the propriety of a divorce decree awarding to the plaintiff the defendant's one-half interest in their jointly held residence and business property, providing the defendant with terminable alimony, and making certain other awards.

The twenty-three year marriage of the parties was dissolved by decree entered December 17, 1979, upon a finding of irretrievable breakdown. At the time of the trial the defendant wife was forty-one years of age and the plaintiff husband was forty-two years of age. There are three children of the marriage, whose ages at the time of trial were twenty, sixteen and twelve. For many years during the marriage the defendant had a drinking problem and was not employed until after the separation of the parties. At the time of trial she was employed as an accounting clerk and was living in an apartment in Hamden. She testified that she had been rehabilitated from her drinking problem since March, 1979. The plaintiff has been self-employed in the business of selling and installing aluminum siding for twenty-five years.

Each party claimed, among other things, custody of the two minor children and conveyance of the other's one-half interest in the jointly owned residential real estate. The trial court awarded custody of the minor children to the plaintiff, with liberal visitation rights to the defendant. The trial court ordered the conveyance to the plaintiff of the defendant's interest in their jointly owned residential property located at 68 Wright Lane and in their business property at 352 Pine Rock Avenue, both in Hamden. In their financial affidavits the parties made estimates of $61,700 and $72,000 as the value of the equity in the residential property and $45,000 and $35,000 for the equity in the business property. As alimony, the trial court ordered that the plaintiff execute a promissory note payable to the defendant in the principal amount of $13,000, payable at the rate of $50 per week for five years, without interest. Prepayment or accelerated payments were authorized. The trial court also ordered that the alimony award was not modifiable, except that it would terminate upon the defendant's death, remarriage, cohabitation within the parameters of General Statutes § 46b-86 (b),[1] or hospitalization due to her voluntary resumption of the cause of her past illness. Joint and individual savings accounts totaling $10,978.13 were awarded to the defendant.

[1] General Statutes § 46b-86 (b) provides: "In an action for divorce, dissolution of marriage, legal separation or annulment brought by a husband or wife, in which a final judgment has been entered providing for the payment of periodic alimony by one party to the other, the superior court may, in its discretion and upon notice and hearing, modify such judgment and suspend, reduce or terminate the payment of periodic alimony upon a showing that the party receiving the periodic alimony is living with another person under circumstances which the court finds should result in the modification, suspension, reduction or termination of alimony because the living arrangements cause such a change of circumstances as to alter the financial needs of that party."

Finally, bonds totaling $837.50 were placed in the control of the plaintiff for the education of their children.

In her appeal from the dissolution decree the defendant claims that the trial court erred in applying the statutory criteria for property division, in basing its findings upon unreasonable interpretations of the facts, in setting the contingencies for alimony termination, and in otherwise penalizing the defendant for her prior illness.

The purpose of property division "is to unscramble the ownership of property, giving to each spouse what is equitably his." Clark, Domestic Relations (1968) p. 450; see *Smith* v. *Smith*, 185 Conn. 491, 493, 441 A.2d 140 (1981); *Pasquariello* v. *Pasquariello*, 168 Conn. 579, 583–85, 362 A.2d 835 (1975). At the time of entering a decree dissolving a marriage, the trial court may assign to either party all or any part of the estate of the other and may order either to pay alimony to the other. General Statutes §§ 46b-81 (a),[2] 46b-82.[3]

---

[2] General Statutes § 46b-81 provides: "ASSIGNMENT OF PROPERTY AND TRANSFER OF TITLE. (a) At the time of entering a decree annulling or dissolving a marriage or for legal separation pursuant to a complaint under section 46b-45, the superior court may assign to either the husband or wife all or any part of the estate of the other. The court may pass title to real property to either party or to a third person or may order the sale of such real property, without any act by either the husband or the wife, when in the judgment of the court it is the proper mode to carry the decree into effect.

"(b) A conveyance made pursuant to the decree shall vest title in the purchaser, and shall bind all persons entitled to life estates and remainder interests in the same manner as a sale ordered by the court pursuant to the provisions of section 52-500. When the decree is recorded on the land records in the town were the real property is situated, it shall effect the transfer of the title of such real property as if it were a deed of the party or parties.

"(c) In fixing the nature and value of the property, if any, to be assigned, the court, after hearing the witnesses, if any, of each

In fixing the nature and value of the property assigned, and in determining whether alimony shall be awarded, and the duration and amount of the award, the court "shall consider the length of the marriage, the causes for the . . . dissolution of the marriage . . . the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate" and needs of each of the parties. General Statutes §§ 46b-81 (c), 46b-82. With respect to property assignment the trial court must also consider the liabilities of the parties, "the opportunity of each for future acquisition of capital assets and income . . . [and] the contribution of each of the parties in the acquisition, preservation or appreciation in value of their respective estates." General Statutes § 46b-81 (c).

---

party, except as provided in subsection (a) of section 46b-51, shall consider the length of the marriage, the causes for the annulment, dissolution of the marriage or legal separation, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties and the opportunity of each for future acquisition of capital assets and income. The court shall also consider the contribution of each of the parties in the acquisition, preservation or appreciation in value of their respective estates."

[3] General Statutes § 46b-82 provides: "ALIMONY. At the time of entering the decree, the superior court may order either of the parties to pay alimony to the other, in addition to or in lieu of an award pursuant to section 46b-81. The order may direct that security be given therefor on such terms as the court may deem desirable. In determining whether alimony shall be awarded, and the duration and amount of the award, the court shall hear the witnesses, if any, of each party, except as provided in subsection (a) of section 46b-51, shall consider the length of the marriage, the causes for the annulment, dissolution of the marriage or legal separation, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate and needs of each of the parties and the award, if any, which the court may make pursuant to section 46b-81, and, in the case of a parent to whom the custody of minor children has been awarded, the desirability of such parent's securing employment."

In its memorandum of decision the trial court expressly followed the guidelines set forth in General Statutes § 46b-81 (c) and made abbreviated findings on the length of the marriage, the cause for the dissolution, the ages of the parties, their health, station, occupation, amount and sources of income, vocational skills, employability, estates, liabilities, needs and opportunities. The trial court stated particularly that "[t]he final factor and most important that the court *must* consider is the contribution of each of the parties in the acquisition, preservation or appreciation in value of their respective estates." The defendant claims that the court's giving preeminence of this factor over the other statutory criteria was a misapplication of the law. We agree that the statute gives no priority to any single criterion in determining a property division. See *Venuti* v. *Venuti,* 185 Conn. 156, 158, 440 A.2d 878 (1981); *Gallo* v. *Gallo,* 184 Conn. 36, 49, 440 A.2d 782 (1981); *Leveston* v. *Leveston,* 182 Conn. 19, 22, 437 A.2d 819 (1980); *Valante* v. *Valante,* 180 Conn. 528, 531, 429 A.2d 964 (1980). The trial court's characterization of this factor as the "most important" may reasonably be construed not as a disregard of this principle, but as indicating that, under its analysis of the evidence, there was a significant difference in the respective contributions of the parties to the acquisition of their property as compared to the small differences between them with respect to the other stautory criteria considered. The trial court's interpretation of the evidence, however, lends color to the defendant's claim that the finding of the trial court concerning the amount of their respective contributions was

unreasonable, because any such error must be regarded as having had a prejudicial impact upon the judgment.

The trial court found that the acquisition of the jointly owned residential property at 68 Wright Lane and business property at 352 Pine Rock Avenue, Hamden, resulted primarily from the plaintiff's contributions. In support of its conclusion the trial court noted that the plaintiff's share of the net proceeds from the sale of "one of the properties" constituted the contribution in the acquisition of the two parcels of real property held jointly by the parties. "[W]here the factual basis of the court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous." *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 221–22, 435 A.2d 24 (1980); see Practice Book § 3060D. Examination of the trial transcript reveals that these findings are not reasonably supported by the evidence.

The plaintiff's uncontroverted testimony was that after the sale of their first residence in 1966 or 1967 the parties had $30,000 cash on hand. Each party testified initially that the defendant retained $10,000–12,000 from the sale of this starter residence, and the plaintiff testified that he contributed the entire purchase price for their second residence at 68 Wright Lane, Hamden, because his wife was never employed. Upon cross-examination the plaintiff corrected his testimony. He stated that the $30,000 joint funds held after the sale of their first residence was put to two uses. Their second res-

idence was purchased with $15,000 of the joint funds, plus a $17,000 mortgage. The parties invested the remaining $15,000 in jointly held investment property. This investment property was later sold and the estimated $20,000 profit realized from the sale was divided between the parties. The business property was purchased with the return of the $15,000 joint funds expended to purchase the investment property. If we trace the disposition of the joint funds from the sale of the first residence through the subsequent purchase of the second residence, the investment property and the business property, we can only reasonably conclude that both the second residence and the business property were acquired by equal contributions of the parties, in contradiction to the finding of the trial court.

The defendant claims further that the trial court's factual findings of the parties' relative incomes, vocational skills, employability and opportunities were unreasonable. Without stating the factual basis for its findings, the court found that the amount and sources of income were "nominal in each case—depends on continued working," their employability was "equal," their vocational skills were "not exceptional," and their opportunities were "difficult to predict—health important." At the time of trial the defendant had recently begun an entry level clerical position from which she netted $146.46 weekly. In obvious contrast to her circumstances, the plaintiff had been employed as an aluminum siding contractor for twenty-five years and earned $394.10 weekly from his employment and interest income. Because of the vagueness of the court's findings with respect to vocational skills and opportunities for future acquisition of

capital assets we hold them to be reasonably supported by the evidence. The court's finding the amounts and sources of income as "nominal in each case," however, is not reasonably supported by the evidence because the plaintiff's $394.10 weekly income cannot be considered nominal. Moreover, the contrast, between the defendant's recently acquired clerical position and the plaintiff's twenty-five-year career as an aluminum siding contractor cannot support the trial court's finding that the employability of the parties is "equal."

Finally, the defendant claims that the trial court penalized her for her prior illness in two respects. The first is that the court improperly considered the plaintiff's payment of $15,000 in medical expenses as a prior benefit bearing on the issue of the property division. In discussing the contribution of the parties to the acquisition of their estates, the trial court stated in its memorandum of decision: "She received a large cash share of the net sale of one of the properties (about one-half) plus he made out-of-pocket disbursements of about $15,000 for treatment of her illness and problems. Her benefits approximated $28,000." There is no basis for the court's consideration of medical expenses paid during the marriage as a factor in determining property division. Medical expenses are part of the family support obligation. General Statutes § 46b-37 (b).[4]

---

[4] General Statutes § 46b-37 provides: "JOINT DUTY OF SPOUSES TO SUPPORT FAMILY. LIABILITY FOR PURCHASES AND CERTAIN EXPENSES. (a) All purchase made by either a husband or wife in his or her own name shall be presumed in the absence of notice to the contrary, to be made by him or her as an individual and he or she shall be liable for the purchase.

"(b) Notwithstanding the provisions of subsection (a) of this section, it shall be the joint duty of each spouse to support his or

The defendant also claims that the court erred in ordering that the plaintiff's obligation under the promissory note reflecting alimony would cease, upon "her hospitalization resulting from a voluntary resumption of the cause of her past illness." Much of the trial testimony focused on the defendant's drinking problems for which she had undergone extensive medical treatment, including institutionalization. This testimony supported the court's finding that the defendant's health problem was the precipitating cause of the dissolution. Although no expert medical testimony was offered, both the parties and the trial court considered her problem as an illness. One of the characteristics of alcoholism is the periodic or habitual lack of self-control on the part of the victim.[5] Accordingly, the

her family, and both shall be liable for: (1) The reasonable and necessary services of a physician or dentist; (2) hospital expenses rendered the husband or wife or minor child while residing in the family of its parents; (3) the rental of any dwelling unit actually occupied by the husband and wife as a residence and reasonably necessary to them for that purpose; and (4) any article purchased by either which has in fact gone to the support of the family, or for the joint benefit of both; (5) the reasonable apparel of the wife; and (6) her reasonable support while abandoned by her husband.

"(c) No action may be maintained against either spouse under the provisions of this section, either during or after any period of separation from the other spouse, for any liability incurred by the other spouse during the separation, if, during the separation the spouse who is liable for support of the other spouse has provided the other spouse with reasonable support."

[5] For the purposes of the chapter on Alcohol and Drug Abuse, General Statutes § 17-155*l* (1) defines an "alcoholic" as "a person who habitually or periodically lacks self-control as to the use of alcoholic beverages, or who habitually or periodically uses alcoholic beverages to the extent that his health is substantially impaired or endangered or his social or economic function is substantially disrupted." Although Connecticut has not substantially adopted The Uniform Alcoholism & Intoxication Treatment Act, the act, adopted in thirteen states, contains a nearly identical definition of alcoholism. Uniform Alcoholism & Intoxication Treatment Act § 2 (1), 9 U.L.A. 57 (1981 Sup.).

trial court erred in setting her hospitalization from a voluntary resumption of the cause of her illness as a ground for terminating her alimony award.[6]

"The well settled standard of review in domestic relations cases is that this court will not disturb trial court orders unless the trial court has abused its legal discretion or its findings have no reasonable basis in the facts. *Gallo* v. *Gallo*, [184 Conn. 36, 50, 440 A.2d 782 (1981)]." *McGuinness* v. *McGuinness*, 185 Conn. 7, 13, 440 A.2d 804 (1981). "As has often been explained, the foundation for this standard is that the trial court is in a clearly advantageous position to assess the personal factors significant to a domestic relations case, such as demeanor and attitude of the parties at the hearing. See, e.g., *Corbin* v. *Corbin*, 179 Conn. 622, 624, 427 A.2d 432 (1980); *Fucci* v. *Fucci*, 179 Conn. 174, 180–81, 425 A.2d 592 (1979); *Jacobsen* v. *Jacobsen*, 177 Conn. 259, 262–63, 413 A.2d 854 (1979)." *McGuinness* v. *McGuinness*, supra. This appeal presents one of the rare cases in which the trial court abused its broad discretion by misapplying the law and by making crucial findings which were not reasonably supported by the facts.

There is no error with respect to dissolution, custody and visitation. There is error in the award of alimony and in the division of property. The judgment is set aside as to alimony and division of property, and the case is remanded for a rehearing on the questions of alimony and division of property in accordance with this opinion.

In this opinion PARSKEY, SHEA and COVELLO, Js., concurred.

[6] The parties agreed at oral argument that this condition subsequent should be deleted from the decree, which agreement this court endorses.

ARTHUR H. HEALEY, J. (concurring). I concur in the result reached by the majority opinion although I write separately to state my views on their observation that "the contrast between the defendant's recently acquired clerical position and the plaintiff's 25-year career as an aluminum siding contractor cannot support the trial court's finding that the employability of the parties is 'equal.'" My view is that to so state, in effect, equates "employability" with "earning capacity" or "earning potential"; see *deCossy* v. *deCossy,* 172 Conn. 202, 205, 374 A.2d 182 (1977); or, more to the point, does not fully consider certain other factors in General Statutes §§ 46b-81 and 46b-82 that go to the present disparate incomes of the parties. In that regard the statutes also enumerate "vocational skills," "occupation," "opportunity of each for future acquisition of . . . income" and "health" as factors for the court to consider in determining alimony and property division.

In construing a statute, no word should be treated as superfluous or insignificant; *Kulis* v. *Moll,* 172 Conn. 104, 111, 374 A.2d 133 (1976); *Hartford Electric Light Co.* v. *Water Resources Commission,* 162 Conn. 89, 101, 291 A.2d 721 (1971); and words and phrases are to be construed according to the commonly approved usage of the language. *Wiegand* v. *Heffernan,* 170 Conn. 567, 581, 368 A.2d 103 (1976); *Consolidated Diesel Electric Corporation* v. *Stamford,* 156 Conn. 33, 38, 238 A.2d 410 (1968). Webster defines "employability" as the "quality or state of being employable" and "employable" as "capable of being employed, *specif*: physically and mentally capable of earning a wage at a regular job and available for hiring." Webster, Third New International Dictionary. In my view, since

both parties are in fact employed, the "employability" of both parties is equal. This is *one* factor to be considered under §§ 46b-81 (c) and 46b-82. "[E]arning potential" has been said to be *one* of the important factors to be considered; see *deCossy* v. *deCossy,* supra, 205; and the statute has other terms going to that factor, i.e., "vocational skills," "occupation," "opportunity for future acquisition of . . . income" and "health." Arguably, this list may not be exclusive, but the "employability" of a person is liminal to any meaningful determination of earning potential or earning capacity as that is explicated by such other statutory terms. In any event, the majority opinion attenuates the distinction between "employability" and the other factors in §§ 46b-81 (c) and 46b-82 referred to above.

I therefore concur in the result.