[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This proceeding was a limited contested dissolution of a marriage between the parties which occurred on March 17, 1956 at Hopewell Junction, New York. The defendant has resided continuously in this jurisdiction at least twelve (12) months next before the filing of complaint. Five children were born of this union: Michael on September 11, 1969; John on June 23, 1966; Deidra on June 1, 1964; Dina on February 5, 1962; and, Denise on August 16, 1958. Each and all of the children has attained his and her majority and currently create no legal obligation for the parties. No other minor children have been born to the defendant since the day of the marriage. No federal, state or municipal agency or public or private trust is contributing to the support of either party. The court finds that the marriage has broken down irretrievably and a decree may enter on the grounds of irretrievable breakdown.
The plaintiff is sixty-one (61) years old and appears to enjoy good health with the singular complaint of hypertension. He has a degree in labor relations from the University of Bridgeport. He has some post graduate work but no post graduate degree. The defendant is also sixty-one (61) years old, obtained her high school diploma and has devoted much of her life to motherhood and in the homemaking pursuits which flow therefrom. Approximately fifteen (15) years ago, she accepted a position at Southbury Training School as a therapist. She earns approximately thirty-two thousand five hundred ($32,500) dollars per year. Her formalized training as a therapist has been from others employed in the field in what she has described as hands-on training. She enjoys the usual State of Connecticut perquisites including a CT Page 629 pension. She is being treated for depression.
The plaintiff asserts that there were no marital difficulties during the early years and describes her as a wonderful mother and homemaker. As the years progressed, however, this testimony suggests a lack of affection on her part. The defendant would respond that the defendant's drinking became a serious problem. His employment history is somewhat checkered. He has held several lucrative positions but none for a very substantial period of time, with the exception of one twelve (12) year period with Perkin-Elmer. Periods of unemployment followed job changes or voluntary withdrawals from the various employment scenarios in which he found himself. He has to his credit become a recovering alcoholic and has enjoyed sobriety for many years.
During the years 1990 through 1993, his earning capacity produced funds in an amount in excess of seventy-five thousand ($75,000) dollars. He voluntarily terminated his employment with the Charles River Computer Corporation after a very short period of time claiming the commutation to New York City exacerbated what appears to be a hypertension problem and was motivated to that termination by a comment from a dermatologist, who was treating him for a dermatological condition only, to the effect if he did not reduce tension and change his lifestyle, that he could die very suddenly. He testified that his ordinary blood pressure reading was "always" 120/80. When the dermatologist did in fact measure his blood pressure on the date in issue in September it was 150/90. The physician testified that he expressed a thought that the plaintiff would kill himself if he did not take care of it (hypertensive problem) change his diet and decrease his anxiety. He did not, however, medicate him for this condition nor did he advise him to leave that position.
His years of employment were in the field of personnel management and he is currently employed as a limousine driver earning something slightly in excess of four hundred five ($405) dollars a week. The plaintiff has a golf membership at the Richter Park golf course in Danbury and on his application under the question of employment he lists "Retired." This court finds it both intriguing and significant to note that his voluntary termination of his employment with Charles River did not occur until a motion to reduce his alimony pendente lite order was denied by this court.
The plaintiff, after leaving the marital domicile, which he CT Page 630 asserts to be February 1, 1993, which the defendant contradicts and maintains was indeed November, 1993, lived with his daughter for a short period of time before obtaining employment in March of 1993 as a consultant with ABB Traction which lists its address as East 18th Street, Elmira Heights, New York, 14903. During that time, he lived in Horseheads, New York and earned in excess of fifty-five thousand ($55,000) dollars for this short venture at ABB. While so employed, he continued a relationship with a lady from that area which apparently had preexisted his employment with ABB. His claim is that that relationship is purely platonic and that his only relationship with her was over her daughter's boy friend who was also struggling to control his alcoholism. His testimony seemed calculated to convince the court that the relationship was indeed innocuous and his efforts to strengthen the resolve of the young man struggling with the problem are most laudatory.
There is a rather dark shadow which haunts his credibility. He spent the fourth of July weekend at the Raleigh Hotel in South Fallsburg, New York. The reservation for that weekend was dated June 19, 1993 and was receipted to Mr. and Mrs. John Dietter on an American Express card owned by that lady. He registered at the hotel on the 2nd of July as Mr. and Mrs. John Dietter declaring two adults in his party. Despite these documentary disclosures, he testified that he was at the hotel alone. That testimony along with his explanation of leaving his employment with Charles River is incredible and borders on the ridiculous. While there may be faults with respect to the failure of this marriage attributable to either party, this court finds that most of the responsibility for its failure rests with the plaintiff. However, our Supreme Court has warned against overemphasizing the issue of fault misplaced in its proper prospective by defining that concept as being one of the many criteria which must be applied in entering orders and a decree of dissolution. See Sands v. Sands,188 Conn. 98, 102.
The assets of the parties are the plaintiff's pension from Loral Corporation which will pay him approximately four hundred seventy ($470) dollars per month at age sixty-five (65) and the balance of a 401K account. The defendant also enjoys pension benefits as a result of her service to the State of Connecticut, the anticipated return of which is approximately seven hundred twenty ($720) dollars per month. He enjoys social security benefit potential, she does not. The major joint asset is the family residence at 2 Colonial Drive in Bethel, which the court CT Page 631 finds to have a fair market value two hundred thirty-five thousand ($235,000) dollars. The property is encumbered with a first mortgage and a home equity line of credit. The parties are in dispute about the actual equity in the residence but the minimum figure expressed is one hundred twenty-five thousand ($125,000) dollars.
In determining whether or not an order of alimony may be appropriate in a given case, the court is mandated to consider the length of the marriage, the cause of the dissolution, the age, health, station, occupation, amount and source of income, vocational skills, employment ability, the estate and needs of each of the parties and any property awarded in accordance with Sec. 46b-81. Dubicki v. Dubicki, 186 Conn. 709, 714-15; citing therein McPhee v. McPhee, 186 Conn. 167, 171 n. 3; see Krieble v.Krieble, 168 Conn. 7, 8. Having considered the statutory criteria in the cases that address them, the plaintiff is ordered to pay to the defendant as and for alimony the sum of three hundred fifty ($350) dollars per week until June 1, 1995 at which time he is ordered to pay to the defendant as and for alimony the sum of one thousand ($1,000) dollars per week. This order is predicated upon his earning capacity and recognizes the fact that certainly in the passage of that period of time he shall have sufficient opportunity to obtain gainful employment which compensates him to the extent of his earning capacity which he is scrupulously attempting to disguise. This payment of alimony shall endure for a period of five (5) years from the date of this memorandum or until the defendant may die, remarry or cohabit with an unrelated male, whichever should first occur. In the event that the plaintiff should die before the obligation is fulfilled, by the passage of time, or the occurrence of one of the conditions of defeasance, said unpaid amounts, if any, shall be a charge against his estate.
In dividing and/or assigning marital property, the trial court must also consider the liabilities of the parties, the opportunity of each for future acquisition of capital assets and income, and the contribution of each of the parties in the acquisition, preservation or appreciation in value of their respective estates. Dubicki v. Dubicki, supra, 714-15; McPhee v.McPhee, supra, 171; Corbin v. Corbin, 179 Conn. 622, 624. The court is left to its broad discretion in awarding alimony and dividing property so long as it considers all relevant facts or a criteria. It is not obligated to make express findings on each and is not required to give equal weight to each in determining CT Page 632 an award. No single criteria is preferred over the other and the weight placed on each is determined upon the circumstances of each case. Debowsky v. Debowsky, 12 Conn. App. 525, 526-27;Carpenter v. Carpenter, 188 Conn. 736, 740-41; Weiman v. Weiman,188 Conn. 232, 234. The purpose of property division is to equitably divide the ownership of the parties' property. Dubickiv. Dubicki, supra, 714 n. 2. It may also be said to unscramble the ownership of property and give to each spouse what is equitably his. Beede v. Beede, 186 Conn. 191, 195; Sec. 46b-81(c). Once again, this court has considered the statutory criteria and the cases which interpret those criteria and applied them.
The parties are directed to immediately list the marital domicile for sale and to accept any offer within five (5) percent of the fair market value which the court has found. Until the domicile is indeed sold, the defendant is awarded exclusive possession of that property and shall be responsible for the shelter expenses and ordinary living expenses incurred therewith. Upon the sale of the property, the net proceeds remaining which are defined as those proceeds available for distribution after the payment of any outstanding mortgages, including home equity lines of credit, taxes, special assessments, capital repairs, real estate commission, and counsel fees shall be divided as follows: sixty (60) percent is awarded to the defendant and forty (40)) percent is awarded to the plaintiff. However, if there is any arrearage in alimony payments at that time, the amount of that arrearage shall be deducted from the plaintiff's share of the net proceeds. The contents of the dwelling are awarded to the defendant subject to such personal property as unmistakenly be his.
The plaintiff in addition to his pension plan and the remnants of his 401K which he has successfully depleted by approximately sixty thousand ($60,000) dollars while satisfying the pendente lite orders, also has the benefits of a social security payment. This, together with his pension plan from Loral Industries, the court finds offsets any difference between those plans and the defendant's pension plans from the State of Connecticut. Neither is awarded any interest in the other's pension plans or the plaintiff's social security benefits.
The thirty thousand ($30,000) dollar balance of the plaintiff's 401K is ordered to be divided in the same ratio — sixty (60) percent to the defendant and forty (40) percent to the plaintiff. The plaintiff shall be responsible for any tax CT Page 633 obligations arising from the premature utilization or disposition of those funds. The parties are awarded any bank accounts standing in their own names which have not been subject to prior orders herein, and the defendant is awarded the 1986 Saab automobile which she currently operates.
Each of the parties is ordered to satisfy and hold the other harmless from those debts listed on their respective financial affidavits. No counsel fees are awarded.
Moraghan, J.