[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This action is a limited contested dissolution of a marriage between the parties which occurred on June 3, 1967 at Newtown, Connecticut. The plaintiff has resided continuously in this jurisdiction at least twelve (12) months next before the filing of the complaint. Two children were born of this union: Tracy on August 2, 1969; and Kerri on January 3, 1976, both of whom have attained their majority. No other minor children have been born to the plaintiff since the date of the marriage. No federal, state or municipal agency or no public or private foundation or trust is contributing to the support of either party. The court finds that the marriage has broken down irretrievably and a decree may enter on the grounds of irretrievable breakdown. CT Page 2696
This is the first marriage for the plaintiff who is forty-seven (47) years old, and enjoyed reasonably good health until experiencing a period of severe depression which led to what she described as a nervous breakdown. Her employment history discloses no remarkable skills. Prior to her marriage, she was employed as a secretary at a Danbury corporation and during the marriage, on various occasions, worked in a part-time capacity as a waitress, and conducted some home sales products parties. Somewhat contemporaneously, with the failure of this marriage, she returned to employment with the Shawmut Bank as a teller and subsequently was promoted to what bankers refer to as the "platform." It was at this time that she experienced her period of depression and ensuing breakdown. Her starting salary was six ($6) dollars per hour and while on the platform she earned ten dollars and eighty ($10.80) cents per hour as a customer service representative. She was forced to withdraw from that employment for a period of at least six weeks and has subsequently returned as a part-time teller. The banking institution, to its credit, has continued to pay her salary at the platform rate. There are benefits incident to her employment such as medical insurance, dental insurance and a life insurance policy with a face value in an amount which essentially triples her salary. Her cost for the medical and dental insurance for her daughter Kerri and for the defendant is approximately thirty-one dollars and fifty ($31.50) cents per week. She receives no contribution from the defendant.
This is the defendant's second marriage. The first ended in divorce and three children born of that union joined him and the plaintiff. Their ages were then five, seven and eight. The plaintiff raised those three children much as she raised her own two, professes a genuine love for them and recites that she never accepted or recognized any difference between those three children and the two children which were born to her. She never did adopt them, however.
At the time of this marriage, the defendant was employed as an automobile mechanic. Soon after the marriage, he purchased four pieces of heavy excavating equipment: a dump truck, a trailer, a backhoe and a bulldozer, and has replaced and renewed that equipment when necessary since the business began in 1969. From all reports, his business reputation is excellent, there are never complaints and he is well respected individually and in the business of earth moving. Credible evidence was received that the value of this property at the present time (including one extra piece of equipment, a Mack truck being rebuilt at the moment and CT Page 2697 which has minimal value), is eighty-two thousand eight hundred ($82,800) dollars. The gross income from his business is in excess of ninety thousand ($90,000) dollars for each of the years 1991, 1992 and 1993. His adjusted gross income for those three years is thirty-one thousand six ($31,006) dollars, thirty thousand two hundred eighty-two ($30,282) dollars, and fourteen thousand four hundred twenty-four ($14,424) dollars, respectively. This court is satisfied that he has an earning capacity which may be conservatively expressed at fifty thousand ($50,000) dollars per year and so finds.
The plaintiff brought no significant assets to the marriage, and the defendant owned a small home which he purchased in 1960 or shortly thereafter. She invested her earnings from her part-time job and he in labor as they enlarged it by building an addition to the living room and raising the roof creating four bedrooms and a bath on the second floor. They sold the house in 1986 for two hundred twenty-five thousand ($225,000) dollars. At that time, the plaintiff and the defendant intended to buy a second home which was owned by a friend of the plaintiff who recites that she had never had a home of her own. They became the successful purchasers of that home for the purchase price of one hundred thirty-six thousand ($136,000) dollars. The pictorial representation of the home at the time of the purchase suggests the words "derelict" and "mess." Together they reconstructed the home. They moved and replaced walls, they overcame termite damage, water damage and serious neglect and created for lack of better words "a beautiful old colonial home." Its rooms, furniture and fixtures can easily be called a "show place," and each is justly proud of the efforts expended and the ultimate results thereof. The court finds the fair market value of the property to be three hundred fifty thousand ($350,000) dollars allocated by an appraiser at two hundred fifty thousand ($250,000) dollars for the home with its outbuildings, and one hundred thousand ($100,000) dollars for the three acres upon which it stands.
The plaintiff is the owner of Mutual Funds issued by Union Trust, and a Merrill Lynch account which total fifteen thousand nine hundred forty ($15,940) dollars. The defendant, in addition to his equipment, has a bank account at Union Trust, and inherited funds which are invested in the Merrill Lynch account which aggregate seventeen thousand nine hundred ($17,900) dollars. He is also the owner of a one-third (1/3) interest in some commercial property, or property which is the subject of a CT Page 2698 zone change before the appropriate municipal authority, located on Farral Road in Newtown. The purchase price of that property was approximately one hundred eighty thousand ($180,000) dollars, and it is encumbered by a first mortgage in that amount. He asserts that if the zone change is granted, that he and his partners have been advised that the property will have a value of three hundred sixty thousand ($360,000) dollars.
In determining whether or not to award alimony, the court should consider the length of the marriage, the cause of the dissolution of the marriage or a legal separation, the age, health, station, occupation, amount of the source of income, vocational skills, employability, the estate and needs of each of the parties, and any property award pursuant to sections 46b-81(c),46b-82. Dubicki v. Dubicki, 186 Conn. 709, 714-15; citing therein McPhee v. McPhee, 186 Conn. 167, 171 n. 3; see Krieble v.Krieble, 168 Conn. 7, 8. The purpose of periodic and/or lump sum alimony is based primarily upon a continuing duty to support.Dubicki v. Dubicki, supra, 714 n. 2; Wood v. Wood, 165 Conn. 777,784. The court has considered those statutory criteria and the cases which address them. It also must recognize that the plaintiff is cohabiting with an unrelated male with whom the defendant believes she has vested a long-standing relationship. The court is satisfied, in the exercise of its discretion, that no order of alimony should enter with respect to either party, and consequently no alimony is awarded.
In issuing orders determining the parties' property rights, including the assignment of marital property, the court must consider the liabilities of the parties, the opportunity for each for future acquisition of capital assets and income, and the contribution of each of the parties in the acquisition, preservation, or appreciation in value of their respective estates. Dubicki v. Dubicki, supra, 714-15; McPhee v. McPhee, supra, 171; Corbin v. Corbin, 179 Conn. 622, 624. It is vested with broad discretion in dividing property so long as it considers all relevant statutory criteria. It is not obligated to make express findings on each and is not required to give equal weight to each in determining such an award. No single criterion is preferred over the others and the weight placed on each depends upon the circumstances of each case. Debowsky v.Debowsky, 12 Conn. App. 525, 526-27; Carpenter v. Carpenter,188 Conn. 736, 740, 741; Weiman v. Weiman, 188 Conn. 232, 234. The purpose in dividing property is to equitably divide the ownership of the parties' property. See Dubicki v. Dubicki, supra, 714 n. 2. CT Page 2699 It may also be said to unscramble the ownership of property giving to each spouse what is equitably his or hers. Beede v.Beede, 186 Conn. 191, 195; General Statutes, Sec. 46b-81(c). Once again, the court has considered those criteria and the cases which speak to them.
The plaintiff has offered alternatives to the distribution of the parties' interest in and to the marital domicile. The first is the transfer with certain conditions of the defendant's interest in and to the marital domicile to the plaintiff. The alternative is, in general, the sale of the marital domicile and the division of the net proceeds after the payment of certain business obligations which appear to have benefited the defendant to the exclusion of the plaintiff. The defendant, however, wishes to retain the marital domicile as his permanent residence. In no event is either of the parties to further encumber the marital domicile, and if any subsequent encumbrances should occur, it or they are to be immediately satisfied by release(s) obtained by the party responsible therefor.
The parties are ordered to list this marital domicile for sale with a reputable broker in the Newtown, Connecticut, area. In the event the parties cannot agree on a reputable broker, each is to choose one and those two brokers are to choose a third who shall in fact be the selling broker with the parties' choices of brokers being recognized as listing brokers. Upon the sale, the net proceeds, which are defined as those remaining after the payment of the first mortgage, and the second which is a home equity line of credit, brokerage fees, counsel fees, and the customary adjustments and costs, shall be divided equally between the parties. The satisfaction of the home equity line of credit, however, which appears without question to have been utilized in the defendant's business, shall be his sole obligation. In the alternative, the defendant is given the option of purchasing the plaintiff's interest in the property. Should he exercise that election, he is ordered within sixty (60) days to deliver to the plaintiff a promissory note secured by a mortgage upon the marital domicile in the principal amount of one hundred forty thousand ($140,000) dollars, together with interest at the rate of 10 percent per annum. Said mortgage shall contain the usual provisions upon default including all costs of collection, including counsel fees. It shall be payable in four annual installments of thirty-five thousand ($35,000) dollars each, beginning on June 1, 1995, and a like amount on the first day of June of the years 1996, 1997 and 1998. The defendant is given the CT Page 2700 right to prepay this mortgage in whole or in part at any time without penalty.
The plaintiff is awarded an undivided one-half (1/2) interest in and to the defendant's undivided one-third (1/3) interest in the property on Farral Road. It shall be payable upon the sale of that property as subsequently defined and the net proceeds of said interest shall be divided in accordance with this award. The term net proceeds is defined as those funds remaining after the payment of any mortgage on the premises, the usual costs and adjustments, real estate commissions and counsel fees. For purposes of determining what those encumbrances may be, the date of this memorandum shall be the date utilized for the computation of encumbrances upon the property, and any subsequent encumbrances filed against the defendant's interest shall be his sole obligation. The sale of the defendant's interest shall be deemed to have occurred upon the consummation of any arms-length conveyance; a conveyance to any legal entity formed by the three owners; or seven years from the date hereof, whichever should first occur. The funds received by the plaintiff from the sale of the Farral Road property are awarded in full satisfaction of any interest she has or may have in and to the defendant's business.
Each of the parties is awarded the individual bank accounts standing in their respective names with the exception of the Merrill Lynch account, seventeen thousand nine hundred ($17,900) dollars, which is ordered equally divided between the parties.
It appears to the court that the parties have determined the disposition of their personal property between them. If this is not the case, then the question of the division of the personal property is to be decided at a subsequent hearing scheduled for that purpose. In no event, however, is that determination of the distribution of personal property to be construed as precluding this memorandum from being a final judgment with respect to all other matters heard by the court in this dissolution.
Judgment may enter, accordingly.
Moraghan, J. CT Page 2701