[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is a suit for dissolution of marriage brought by the plaintiff husband against the defendant wife. The parties were married in Fairfield, Connecticut on March 10, 1979. There are two minor children issue of the marriage, Lauren B. Davies born January 15, 1983 and Brynne E. Davies born June 17, 1985. The children reside with their father and paternal grandparents at CT Page 11960 1060 Black Rock Turnpike, Easton, Connecticut, a home owned by the plaintiff and his father, the third party defendant, Kenneth Davies.
It is alleged in the second count of the defendant's amended cross-complaint dated September 29, 1997, that the plaintiff, between October 1, 1993 and July 10, 1994 transferred assets to his father without adequate consideration and to defraud the interest of the defendant by removing assets of the marriage beyond the defendant's control. It is claimed that these were fraudulent transfers within the meaning of §§ 52-552a-5521, but particularly § 52-552f of the General Statutes which provides as follows:
 (a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.
 (b) A transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time and the insider had reasonable cause to believe that the debtor was insolvent.
As noted, the children are 14 and 12 years of age. They have expressed their desire to reside with their father. The court has been guided in this proceeding by very able counsel for the minor children and by very able counsel serving as guardian for the minor children.
On April 22, 1997, the plaintiff and the defendant entered into a stipulation that they shall have joint legal custody of the minor children but that the children shall reside physically with the plaintiff and attend school in the district in which he resides, which at the time of the stipulation and continuing is the district of Easton-Redding. The stipulation further provided CT Page 11961 that the defendant shall have liberal, flexible rights of access and visitation with the children by mutual agreement with and upon reasonable notice to the plaintiff and to the children. It provided further that in the event the plaintiff intends to relocate the children's residence outside of their present school district he shall give the defendant sixty (60) days written notice of his intention to relocate by certified mail, return receipt requested. The defendant, by said stipulation, shall have the right to petition the court with respect to the intended relocation as a custodial and/or visitation issue.
The court canvassed the parties and found that the parties voluntarily entered into that stipulation, that the signing of the stipulation was each party's free act and deed, that the provisions of the stipulation were in accordance with the children's expressed wish to their counsel and that the plaintiff and the defendant both felt on April 22, 1997 that the provisions of the stipulation were in the children's best interests. The court did, on September 9, 1997, enter orders in accordance with the parties' stipulation. The court finds that this stipulation is in the children's best interests and does, by this memorandum of decision, enter orders in accordance with that stipulation.
The plaintiff is 42 years of age and in excellent health. He is a licensed civil engineer, having graduated from New England University in Boston with a Bachelor of Science degree and a Master of Science degree in Civil Engineering from Columbia University in 1979. He is a specialist in structural engineering. Following graduation from Columbia, he worked for his father building residential homes. During the period 1979 to 1983, he worked full time for Davies Construction Company. It was during this period of time that the property known as 1060 Black Rock Turnpike in Easton was purchased in the name of Kenneth Davies and Scott Davies, with plaintiff's father, Kenneth Davies, supplying all of the money.
In 1985, the plaintiff started his own business, Champion Engineering. This was a sole proprietorship providing consulting services involving structural engineering. His average income in the 90's was $25,000 to $30,000 per year. In 1996, he entered into a supervisory and construction manager contract for $82,000, which was paid in 1995 and 1996 and a construction project in Westport for $30,000. In the year 1997, the plaintiff testified prospects were very poor and that he had no big jobs at all. His current financial affidavit reports gross annual income of CT Page 11962 $30,600 and net income before taxes and Social Security of $23,400 for a net income after deductions of $16,000 or $309.28 per week. A list of jobs done in 1997 is in evidence as plaintiff's exhibit G.
In 1980, the plaintiff purchased a three family house at 1906 North Avenue in Bridgeport. The property is presently in a distressed condition. It is presently listed for sale for $64,900. Plaintiff testified its true value is $48,000. It is subject to a mortgage for $47,000 and a $4,000 lien. Plaintiff's financial affidavit shows a negative net value of $3,000.
The plaintiff also owns a one-half interest with his father in the property at 1060 Black Rock Turnpike in Easton. It is presently listed for sale at $399,000. Its original listing price was $449,000, which was then reduced to $425,000, then to $399,000. The plaintiff lists a value of $380,000 in his financial affidavit. The property is subject to two mortgages, a first in the amount of $149,000 and a second in the amount of $65,000. Further, the joint owner Kenneth Davies is owed $32,000. Plaintiff, on his financial affidavit, shows a net equity value for his half share of $51,000.
The parties together own interests in an Orlando time share valued at $4,500 and a Vermont time share valued at $7,200.
The defendant is 39 years of age and in excellent health. The parties met in 1975 when the defendant was but 16 years of age. They began dating intermittently although serious dating did not occur until 1977-78. They began living together in September, 1978. When the parties married, the defendant was a student at the University of Bridgeport. She had three part time jobs for pay and led exercise classes, took care of her grandmother and took care of two ladies. She worked and paid for the food and utilities and bought the gas for her car.
In 1981, the defendant graduated from the University of Bridgeport with a degree in Early Childhood Elementary Education. She worked in three different homes after graduation until 1982 when she got a job as a prekindergarten teacher. At the time of this job, she was pregnant with Lauren, and when Lauren was born, she took four weeks off for maternity leave and returned to her teaching job to finish the school year. . The parties were living at that time at 1906 North Avenue. They remained living there until May, 1984 when they moved into the property owned jointly CT Page 11963 by both of them at 502 Bronson Road in Fairfield.
In August, 1985, the property at 442 Bronson Road was purchased by the plaintiff and his father. This property, too, was in poor condition and needed total renovation. Renovation was started but the work was never completed until 1994.
The defendant became a home schooling counselor and taught the girls their school subjects. They took field trips together, participated in sleep overs both at home and at other's houses, started a 4H Club and a Girl Scout Troop together. The defendant continued the home schooling until June, 1994.
In 1980, the defendant started a decorated clothing business:Over the Rainbow. With the proceeds she purchased clothing for the children and herself.
In October, 1993, the parties and the children moved into 1060 Black Rock Turnpike. In the late 1980's, the relationship between the parties became strained. The plaintiff was rowing three or four times per week and/or weekends. On weekends the plaintiff would participate in rowing races and the family would accompany him five to ten times per year. There was difficulty in communicating. They participated in marriage counseling in 1993. After one visit, the plaintiff did not continue. In the fall of 1992, the defendant started going out in the evenings, first once every other week, then once a week, then three times a week: to the movies, to her cousin's home, to Gold's Gym in Norwalk and Gold's Gym in Fairfield. In the fall of 1992, she met a male friend which became a romantic relationship in the winter of 1993. The relationship lasted a couple of months and then ended. She did not tell the plaintiff of this relationship until the spring of 1993.
In August, 1993, the plaintiff told her he was going to change and she said he did. In January, 1994, the defendant went to see the Pastor of their church. The attempt at reconciliation early in 1994 seemed to be failing and on May 28, 1994, the plaintiff moved out of the house. On June 18, 1994, the complaint in this matter was served upon the defendant. The plaintiff moved back into the house in October, 1994, and the parties again attempted a reconciliation. In March, 1995, there was a big altercation, and the police were called and both parties were arrested. CT Page 11964
On April 25, 1995, while the defendant was away with the plaintiff on a business trip, all of her belongings were moved from the Black Rock Turnpike address to 502 Bronson Road while the plaintiff's parents moved from 502 Bronson Road to 1060 Black Rock Turnpike. On May 31, the parties appeared before Petroni, J., and he ordered temporary alimony to be paid to the defendant in an amount of $250 per week together with the mortgage, car insurance, health insurance and utilities. It is the defendant's claim that as of September 22, 1997, there is an arrearage on this order of $1,155.48 (see defendant's exhibit 24).
The defendant has registered as a substitute teacher in the Easton-Redding School District but substituted only six times. Her pay as a substitute teacher was $7.00 per hour. She is not certified as an elementary school teacher and needs to take a refresher course and two tests. The cost to become prepared would be $100.00 — $150.00.
In May, 1997, the 502 Bronson Road home was sold for $334,900 with net proceeds of $36,423.49. From that amount, Attorney Reath and Myers, Breiner Neufeld have been paid $12,008.00 leaving a balance in escrow of $24,415.49. An order was entered that Attorney Reath should receive an additional $2,625 for her services through September 24, 1997, thus leaving a balance of $21,790. An order was entered that Attorney Rosenberg should receive $13,000 for her fees as Guardian Ad Litem for the minor children leaving a balance of $8,790.
In the defendant's third party complaint it is claimed that the plaintiff fraudulently conveyed away property depriving the defendant of her share of the marital estate. During the period between the plaintiff's discovery of the defendant's infidelity and the trial of this matter, there were numerous financial transactions. The net effect of these transactions, while they decreased the gross marital estate, did not deprive the defendant of any part of her share of the marital estate.
The property at 442 Bronson Road was sold. This was owned by the plaintiff and his father and had been owned by them from the date of the property's purchase. The net proceeds of sale were split equally between them. Of the plaintiff's $125,000 share, $55,000 was paid to his father for money owed on 502 Bronson Road. The court accepts the plaintiff's and Kenneth Davies' testimony in this regard and finds that this money was owed to Kenneth Davies. The balance of plaintiff's share of $70,000 was CT Page 11965 held by Kenneth Davies and has been paid back to the plaintiff for living expenses since that time. Indeed, more than that amount has been paid over to the plaintiff so that the plaintiff now owes his father $42,000.
Out of the $70,000, the plaintiff did establish two custodial accounts for his daughters' college education in an amount of $10,000 each for a total of $20,000. The court finds that these accounts were established to deny the defendant her share of the marital estate.
In 1994, the equity credit line secured by 502 Bronson Road was $109,000. The credit line amount was increased substantially during this period because of the plaintiff's expenses far exceeding his income. His IRA accounts were drawn out also in this period. The defendant wrote a check for $35,000 against the credit line during this period.
Also during this period, the third party defendant Kenneth Davies wanted his money out of the property at 1060 Black Rock Turnpike. The plaintiff and Kenneth Davies mortgaged the property for $150,000. The net mortgage proceeds were $139,000 (see defendant's exhibit 3). All of these sums went to Kenneth Davies for money owed to him from the plaintiff's share of the equity in this property.
Of all of these transfers, the court finds that none of the transfers to the third party defendants were to deprive the defendant of her equitable share in the marital estate. The court finds, also, that these payments were for antecedent debts owed by the plaintiff to his father on these properties. The court finds further that the custodial account transfers were to deprive the defendant of her equitable share in the marital estate.
The defendant's motion to amend her third party complaint to conform to the proof is granted.
In two more months, Lauren will be 15 years of age. Brynne is 12 and will be 13 in June, 1998. Certainly, Lauren is of sufficient age and capable of forming an intelligent preference. Brynne is, perhaps, right at that in between age. It is clear from the Guardian Ad Litem, from their counsel and from their letters (see Guardian Ad Litem's exhibits 1 and 2 and Children's exhibit 1) and their letter of May 30, 1995, addressed to Judge CT Page 11966 Petroni that they wish to live with their father, but to see their mother on a week night and weekends whenever they want.
The children are extremely well adjusted. Their report cards for last year have been produced in evidence (plaintiff's exhibits A and B). Lauren in grade 7 had all A's for a final grade. Brynne in grade 5 had four A's and one B+. Both girls are now in Brynne in grade 5 had four A's and one B+. Both girls are now in Helen Keller Middle School, Lauren in grade 8 and Brynne in grade 6. Counsel for the children has argued for and submitted claims for relief that the children have regular counseling and be seen by a duly licensed therapist. Except for the children's counsel's request in this regard, the mother's request and the Guardian Ad Litem's request in this regard, there has been no other suggestion that counseling was necessary. The evidence has indicated that the children are perfectly well adjusted. The court does not find that such counselling is necessary nor indicated at this point. Certainly, as argued by the Guardian Ad Litem, Lauren and Brynne have shown and declared that they want to spend frequent and extended time with their mother. They want their mother to have a prominent part in their life and this must be so.
The defendant at present is not employed. She is living at home with her mother and her brother. Unfortunately, there is just not enough money to "go around." Unfortunately, too, there is very little property to satisfy the needs of both parties. In considering the matter of alimony, the Supreme Court has stated as follows:
With regard to alimony, the Supreme Court has stated as follows:
 To begin with, our alimony statute does not recognize an absolute right to alimony, General Statutes § 46b-82; Thomas v. Thomas, 159 Conn. 477, 487, 271 A.2d 42 (1970); `This court has reiterated time and again that awards of financial settlement ancillary to a marital dissolution rest in the sound discretion of the trial court.' (Citation omitted.) Although the court is required to consider the statutory criteria of length of income, assets and opportunity for future acquisitions of assets of each of the parties, (citation omitted), no single criterion is CT Page 11967 preferred over all the others. In weighing the factors in a given case, the court is not required to give equal weight to each of the specified items. Nevertheless, it is rather obvious that in making financial determinations, the financial circumstances, both actual and potential, are entitled to great weight. Valente v. Valente, 180 Conn. 528, 530 (1980); Watson v. Watson, 221 Conn. 698, 710 (1992).
With regard to assignment of property, the Appellate Court in the case of Emanuelson v. Emanuelson, 26 Conn. App. 527, 530, 531
(1992) stated as follows:
 "General Statutes § 46b-81 (c) requires the trial court to evaluate certain factors before distributing the parties' assets in a marital dissolution action. Although the court must evaluate all the factors listed, it has broad discretion when applying the statutory factors to assign the parties' assets. O'Neill v. O'Neill, 13 Conn. App. 300, 312, 536 A.2d 978, cert. denied, 207 Conn. 806, 540 A.2d 374 (1988)."
The court in O'Neill v. O'Neill, supra, at page 311, stated as follows:
 "The purpose of a lump sum distribution as a property settlement is to make an equitable division of property. McPhea v. McPhea, 186 Conn. 167, 170, 440 A.2d 274 (1982). A court must, therefore, `unscramble' ownership of property in order to give each spouse what is equitably his or hers. Id. An equitable division of property upon divorce or dissolution envisions that full recognition by the courts will be given to the noneconomic contributions of both spouses. (Citations omitted.)
 A property division ought to accord value to those nonmonetary contributions of one spouse which enable the other spouse to devote substantial effort to paid employment which, in turn, enables the family to acquire tangible marital assets. The investment of human capital in homemaking has worth CT Page 11968 and should be evaluated in a property division incident to a dissolution of marriage. We hold, accordingly, that an equitable distribution of property should take into consideration the plaintiff's contributions to the marriage, including homemaking activities and primary caretaking responsibilities.
The court has considered all of the criteria of §§ 46b-81,46b-82, 46b-84, together with the provisions of §§ 46b-56,46b-56a, 46b-62 and 46b-215b of the General Statutes together with all the evidence and the case law. Since "[i]t would serve no useful function to require the trial court ritualistically to rehearse the statutory criteria that it has taken into account",Scherr v. Scherr, 183 Conn. 366, 368 (1981), this court will not recount those statutory criteria and the evidence, other than as has been previously stated. "The court is not obligated to make express findings on each of these statutory criteria." Weiman v.Weiman, 188 Conn. 232, 234 (1982).
The court, in addition to the foregoing findings, finds as follows:
1. There is the requisite jurisdiction.
2. The allegations of the substituted complaint dated April 22, 1997, have been proved and are true.
3. The allegations of the second count of the defendant's amended cross-complaint are found in favor of the third party defendant, Kenneth Davies.
4. The conveyances as described in the second count in the defendant's amended cross-complaint are found to have been made for good and valuable consideration and not made for the purpose of defeating the interests of the defendant.
5. There has been an irretrievable breakdown of the marriage.
6. Both parties are at fault for the breakdown of the marriage.
7. It is in the best interests of the minor children that orders enter for joint legal custody, the children to reside principally with their father. CT Page 11969
8. At the time of trial, the plaintiff was in arrears in the amount of $1,155. An arrearage is, therefore, found of $1,155.00 to September 29, 1997.
9. The stipulation entered by the parties on April 17, 1997, is found to be voluntarily entered into by the parties, is found to be fair and equitable and orders shall enter in accordance therewith.
10. The court bases its alimony award upon the productive capacity of the plaintiff. The court finds that the plaintiff has a productive capacity of Twenty-five Thousand ($25,000) Dollars per year net after taxes and social security withholding or self-employment taxes.
The court enters the following orders:
1. A decree of dissolution of marriage shall enter on the grounds of irretrievable breakdown of the marriage.
2. Judgment shall enter in favor of the third party defendant, Kenneth Davies on the second count of the defendant's amended cross-complaint.
3. The first count of the defendant's amended cross-complaint is dismissed, judgment being entered on the plaintiff's substituted complaint.
4. The plaintiff and the defendant shall have joint legal custody of the minor children of the parties, Lauren B. Davies born January 15, 1983 and Brynne E. Davies born June 17, 1985, but said children shall reside principally with the plaintiff and attend school in the district in which he resides.
5. The defendant shall have liberal and flexible access and visitation with the children by mutual agreement with and upon reasonable notice to the plaintiff and to the children.
6. In the event that the plaintiff intends to relocate the children's residence outside of their present school district, he shall give the defendant sixty (60) days notice of his intent to relocate by certified mail, return receipt requested. The defendant shall have the right to petition the court with respect to the intended relocation as a custodial and/or as a visitation issue. CT Page 11970
7. The plaintiff father shall confer with and obtain the consent of the defendant-mother prior to making any major decisions regarding the health, education and religious upbringing or welfare of the children.
8. When the children are with one parent, they shall have reasonable telephone contact with the other party. Neither party shall prevent or hamper the children from communicating with the other party.
9. Each of the parties shall immediately furnish the other party with copies of any reports from or to third persons or institutions concerning the health, education or welfare of the minor children and shall notify the other party of all school and extracurricular functions and activities in which the minor children are involved. Each party shall be entitled to complete, detailed information from any pediatrician, general physician, dentist, consultant, therapist or other specialist attending either minor child for any reason whatsoever and to be furnished with copies of any reports given by them, or to them, to the other party. Each party shall be entitled to receive or obtain all records, reports, or results from any school which either minor child is attending or from or to any teacher, guidance counselor, or other official therein, and both may participate equally in all school functions and activities of which each party may receive notice.
10. Neither Party shall make disparaging comments about the other party or the other party's family to or in the presence of the minor children. The parties shall exert every reasonable effort to foster a feeling of affection between the children and the parties. Neither party shall do anything which may estrange the children from the other parent or injure the opinion of the children as to their mother or father.
11. Both parties shall consider when calling the other party that an answering machine may be recording and that the children may hear such recorded message. The parties should govern their comments accordingly.
12. The plaintiff shall continue to maintain medical insurance for the minor children, and the parties shall share equally the cost of any and all unreimbursed medical, dental, CT Page 11971 psychiatric, psychological and/or prescription expenses for the children.
13. The plaintiff shall pay to the defendant the sum of $1,155 within thirty (30) days of the date hereof.
14. Attorney's fees for the Guardian Ad Litem in the amount of $13,000 shall be paid to the Guardian Ad Litem from the escrow account held by Attorney Curran.
15. Attorney's fees for counsel for the minor children shall be paid to her in the amount of $2,025 from the escrow account.
16. The balance of the escrow account, that is, $8,790 shall be immediately paid to the defendant.
17. The transfers from the plaintiff to the plaintiff as custodian under the Uniform Gifts to Minors' Act for the benefit of Lauren Davies and Brynne Davies are set aside and the balances of these accounts are ordered to be paid over to the defendant as an assignment of estate pursuant to § 46b-81
of the General Statutes, such payment to be made within thirty (30) days of the date hereof.
18. The plaintiff shall pay to the defendant by way of alimony the sum of Two Hundred Fifty ($250.00) Dollars per week terminable upon the earliest to occur of the following events: the death of either of the parties, the defendant's remarriage or December 31, 2007. An immediate order for wage withholding shall issue to secure said payment. The plaintiff shall supply to the defendant copies of any form 1099's or W-2 statements he may receive by March 1 of each calendar year for so long as he is obligated to pay alimony.
19. The defendant shall pay to the plaintiff by way of support for the minor children the amount of One ($1.00) Dollar per year. She shall notify the plaintiff within forty-eight (48) hours of any change in her employment status.
20. The defendant shall transfer and convey all of her right, title and interest in and to the Vermont time share to the plaintiff, and the plaintiff shall indemnify and hold her harmless from any claims or demands connected with said property. CT Page 11972
21. The plaintiff shall transfer and convey all of his right, title and interest in and to the Orlando, Florida time share to the defendant and the defendant shall indemnify and hold harmless the plaintiff from any claim or demand connected with said property.
22. At such time as the property at 1060 Black Road Turnpike in Easton is sold, the plaintiff shall pay over to the defendant one half of his share of the net proceeds of sale. Net proceeds of sale shall be defined to be the amount remaining after payment of any brokerage fees incurred on the sale, normal closing costs, reasonable attorney's fee in connection with the sale, payment of the first and second mortgages without any increase over the amounts reflected in the plaintiff's financial affidavit and the deduction from the plaintiff's half of the net proceeds of an amount not to exceed $22,000 owed to Kenneth Davies as reflected in the plaintiff's financial affidavit. The defendant shall have a lien upon the property at 1060 Black Rock Turnpike to secure her interest in said property.
23. The plaintiff shall pay to the defendant the utility payments made by the defendant's brother in the amount of $784.89.
24. The defendant is to retain the household furniture and furnishings formerly located at 502 Bronson Road in Fairfield except for an oak table and four chairs which shall be the property of the plaintiff. The children's beds may be retained by the defendant for the children when they stay overnight with her. The plaintiff shall immediately return to the defendant the Minolta camera, the pink lamp, and the defendant's father's antique cast iron stove. The parties shall divide the family Christmas decorations and shall divide the family photographs. If there are any photographs desired by both parties, they shall be reproduced, such cost of reproduction to be at plaintiff's expense.
25. The plaintiff shall cooperate with the defendant so that she may arrange for continued coverage under his medical insurance policy pursuant to the provisions of § 38a-538
of the Connecticut General Statutes at her expense.
26. The real property at 1906 North Avenue, Bridgeport, shall be wholly the plaintiff's free of any claim or demand by the defendant. CT Page 11973
27. The plaintiff shall retain ownership of the 1994 Jeep and the 1986 Jeep. The defendant shall retain sole ownership of the 1983 Audi automobile.
28. Each party shall retain any checking or savings accounts in her or his own name.
29. The plaintiff shall carry a life insurance policy in the sum of One Hundred Thousand ($100,000) Dollars on his life with the minor children as irrevocable beneficiaries of said policy for so long as he is obligated to pay support.
30. The defendant shall attend and satisfactorily complete the parenting education course, the same to be completed within ninety (90) days of this date.
31. The issue of custody and visitation shall be referred to Family Relations for an updated evaluation for the purpose of reviewing the custody and visitation arrangements between the parties. Such referral shall be sought by counsel for the minor children early in the year 1999.
32. Each party shall pay her or his own attorney's fees.
Orders shall enter in accordance with the foregoing.
EDGAR W. BASSICK, III, JUDGE TRIAL REFEREE