[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is a suit for dissolution of marriage brought by the plaintiff wife against the defendant husband. The parties were married on April 16, 1987 in Katona, New York and immediately thereafter moved to the defendant's home on Hattertown Road in Monroe, Connecticut. There are two children issue of the marriage: James Wilken Munson, Jr., born September 21, 1987 and Caitlin Jude Munson, born June 12, 1991.
In addition to the plaintiff and the defendant, there is a third party in this proceeding, Calvin Munson, the brother of the defendant, whom it is alleged received an interest in the real property owned by the defendant after commencement of this action "without adequate consideration and for the purpose of defeating the interest of the plaintiff and removing assets of the marriage CT Page 9180 beyond the plaintiff's control." (See paragraph 6 of the second count of the plaintiff's amended complaint served upon the defendant Calvin Munson on March 1, 1997 and filed on what appears to be March 7, 1997.)
In the amended complaint, the plaintiff seeks custody of the minor children. The defendant, too, in his cross complaint of May 8, 1996 seeks custody of the minor children. This issue was referred to the Family Services Division for mediation. Mediation, however, was not successful and a custody evaluation was done. The issue of primary residence of the children is not in dispute, but the defendant seeks joint legal custody.
The court (Mintz, J.) has ordered the parties to participate in a parenting education program. The plaintiff has satisfactorily completed such a program, but the defendant, apparently, has not. (There is no certificate of program completion in the file.)
In his claims for relief, the defendant requests that the parties "continue to share joint custody of the minor children" and that "the primary residence of the children should be with the mother." The plaintiff, in her claims for relief, requests "sole custody of the minor children." The plaintiff has chosen not to have the family relations officer who did the custody evaluation testify and has indicated that the court can decide the issue of joint versus sole custody on the basis of the evidence. The oldest child will be ten this month and Caitlin, the younger child, is six years of age.
The defendant has been diagnosed as having an attention deficit disorder. His attention span is quite obviously limited. His behavior on the witness stand has been different than the norm and unusual. He has had difficulty answering questions directly and inclined to ask questions in response to plaintiff's counsel's questions in what would appear to be a "wise guy" fashion. He has expressed his considerable ill feeling toward the plaintiff's attorney on the witness stand. He has apologized to the court and to plaintiff's attorney for his outburst.
The defendant has been treated by a psychiatrist and a psychologist and is on medications. The medication causes inconsistency in his behavior, interrupts his concentration and often causes him to reply verbally in an impolite or inappropriate manner. He is often late for work and disorganized CT Page 9181 at work and at home.
Plaintiff has testified of her concern for the children's safety when they are with their father. Plaintiff's exhibits E and F demonstrate unsafe conditions for a ten and six year old. The defendant will have to address these conditions and take steps to eliminate the unsafe conditions at the Hattertown Road property (i.e. store the extension ladder someplace where it will not be climbed by Caitlin).
Effecting the issue of joint custody is the defendant's irresponsibility. The plaintiff has testified that the defendant has been irresponsible from time to time and the defendant's handling of finances since the parties' separation in August, 1994, demonstrates financial irresponsibility. The parties have been unable to agree on anything important concerning the children, although they appear to be able to communicate concerning visitation. An essential element of an order of joint custody, however, is that the parties be able to communicate on important issues in the children's best interests. See Emerick v.Emerick, 5 Conn. App. 649 (1985).
Section 46b-56a of the General Statutes provides in part as follows:
 "For the purposes of this section, `joint custody' means an order awarding legal custody of the minor child to both parents, providing for joint decision-making by the parents and providing that physical custody shall be shared by the parents in such a way as to assure the child of continuing contact with both parents." (Emphasis supplied.)
The court finds that the parties would not be able to accomplish "joint decision-making" and that the defendant's present situation with his medication is such that sole custody of the minor children should be with the plaintiff.
Plaintiff's request that she be allowed to visit defendant's premises and inspect for safety sake is denied. This will only lead to difficult confrontations between the parties and allow the plaintiff to have veto power over the children's visitation with their father. The defendant shall designate a third person to examine his home monthly to determine its safety for the children and report his or her observations to the plaintiff. CT Page 9182
The plaintiff is forty-five years of age. Her health is generally good, although she had an operation for a cervical herniated disc last summer and was out of work for two months. She is an activities therapist. She received a Bachelor of Science degree from Southern Connecticut University in 1974 and a Masters degree in Counseling in 1978. At the time of the parties' marriage, the plaintiff was employed full time at St. Vincent's Medical Center and resided in a cottage in Milford owned by her father and her at 15 Stone Street. This was purchased by her father in 1978.
The parties met in 1984, introduced by a mutual friend. They separated in August, 1994, when the plaintiff left the family home. At that time, she moved into her father's home on Mistletoe Drive in Southbury where she and the two children, together with her father, have continued to reside up to the present time. At present she works two days per week earning $10.00 per hour.
The defendant is employed at Munson Builders, Inc., a corporation wholly owned by his brother Calvin, the third party defendant. The defendant is a finish carpenter. At the time of the parties' marriage, he had worked for his brother Calvin for 20 years and was earning $12.00 per hour. He now earns $20.00 per hour. He is 51 years of age. His health is good except for a rotator cuff injury sustained in 1993. This does not prevent his working but effects what he can do. He cannot work with his hands over his head for any long periods of time. After his rotator cuff injury and a period of recovery, his income started to recover in 1994. In 1995 he started medication for his attention deficit disorder. At first, the medications caused problems with his work. He says that his medication is "fairly well stabilized" at present and that his "work situation will improve." His financial affidavit reflects 3 1/2 days of work at $20.00 per hour for a gross weekly wage of $337.00 and a net weekly wage of $225.00. He receives rental income from a two family house he owns on Renchy Street in Fairfield and a one third interest in property at 118-124 Forest Avenue in Fairfield. His net income for the last five years including wages and rental income has been as follows: 1992-$56,709; 1993-$39,134; 1994-$56,666; 1995-$55,876; 1996-$42,399. His net wage income for 1993 was $5,246; for 1994 was $4,293; for 1995 was $8,611; and for 1996 was $10,127. (See stipulation of the parties, plaintiff's exhibit K.
As previously noted, the plaintiff has joined the defendant's CT Page 9183 brother Calvin Munson as a third party defendant in this action. The defendant on May 10, 1996, executed two mortgages, each for One Hundred and Five Thousand ($105,000) Dollars to Calvin Munson liening the family residence at 421 Hattertown Road in Monroe and the Renchy Street property in Fairfield. Suit was brought in this proceeding on July 22, 1995, 12 days shy of ten months prior to such mortgage. Munson Builders, Inc., a corporation wholly owned by the defendant, Calvin Munson, loaned money between March 1, 1987 and May 1, 1996 to the defendant and is owed more than $105,000. The debt to Munson Builders, Inc., was assigned to Calvin Munson on May 1, 1996 (see third party defendant's exhibit 3). There has, therefore, been substantial consideration for the defendant's mortgage of the Renchy Street property and judgment must enter for the third party defendant on the second count of the plaintiff's amended complaint.
It should be noted here that from the time of the commencement of this action the defendant has failed to pay the bank mortgage on his Renchy Street property and on the Hattertown Road property in Monroe, and both properties are now in foreclosure. [See defendant's financial affidavit Part IIA (page 2).]
During the marriage, the plaintiff took care of the children, did the grocery shopping, did the shopping for the children's clothing, took the children to their doctors' appointments, did the household chores and worked, after the children were born, three and a half days per week. During the period the plaintiff was working, the children were in nursery school or a day care center and the plaintiff paid the nursing school or day care center costs. The plaintiff paid for the groceries, her clothes and the children's clothes and the defendant paid all the household expenses including the mortgages and real property taxes. There were no joint bank accounts, and the plaintiff used the defendant's credit card with his permission only two times for purchases and three times for car repairs.
At the time of their marriage, the plaintiff owned a one half interest in the property owned with her father on Stone Street in Milford, a savings account with $5,000, a car and an IRA with a balance of $2,000. During the marriage, her mother died and she received $1,000 on a life insurance policy. She continues to own the one half interest in the property on Stone Street valued at $25,000, a checking account with a balance of $300 and an IRA account with an approximate balance of $3,000. She owes her CT Page 9184 father approximately $22,000. She has no automobile and is driving her father's automobile.
At the time of the marriage, the defendant owned the same real estate interests he owns today; that is, the real property at 46 Renchy Street in Fairfield, the real property at 421 Hattertown Road in Monroe, and his one third interest in the real property at 118-124 Forest Avenue in Fairfield. He then owned and continues to own the 1973 Volkswagen reported in his financial affidavit. His liabilities consisted only of the mortgages on the three real properties and then in amounts less than the present principal balances. The mortgages on all three properties have been refinanced to acquire further cash. The defendant inherited $10,000 from a relative in 1987. During the entire marriage, the defendant has become more and more in debt, but at an even faster rate since this dissolution action was commenced. By way of refinance or borrowing, he has received $97,000 plus $110,000 from Munson Builders, Inc. and brother Calvin.
As already noted, the parties separated in August, 1994. The relationship between the parties at that point had deteriorated to a point where the marriage had broken down. The plaintiff felt the defendant did not care. Plaintiff testified the relationship had become dysfunctional; there was no household money, no savings account, no college fund, no food money. While plaintiff suspected an adulterous relationship between the defendant and another woman, the court finds that that relationship was only that of good friends and that there was no extramarital sexual relationship. The court finds, also, that the marriage has broken down irretrievably. While the breakdown has occurred because of the defendant's lack of attention, lack of responsibility, forgetfulness and lack of concentration (all associated with his attention deficit disorder), the court does not find the fault for the breakdown to be with either of the parties.
Some weeks before the marriage, a prenuptial agreement was shown to the plaintiff. The plaintiff was four months pregnant at the time, which fact is recited in the agreement. The agreement in evidence (defendant's exhibit 5) is unexecuted. The parties have testified that it was signed on a date very close to the marriage date. The plaintiff has testified that she saw the agreement only once, that the defendant indicated to her that signing the agreement was a condition of the marriage, that the defendant had had the agreement prepared and that there was not a full disclosure of the parties' assets. CT Page 9185
In view of the plaintiff's pregnancy and the defendant's insistence that the agreement be signed before a marriage, the court finds that the plaintiff signed the agreement under duress. An antenuptial agreement is a contract and must, as is true of any other contract, comply with ordinary principles of contract law. McHugh v. McHugh, 181 Conn. 482, 486 (1980). Having found that the plaintiff signed the agreement under duress, the agreement is invalid and of no legal force and effect.
The defendant's property values and encumbrances are as follows: 421 Hattertown Road, Monroe (the family home) valued at $190,000 subject to a mortgage for $135,000 with an arrearage of $20,000, which property is in foreclosure; 46 Renchy Street valued at $165,000 subject to a mortgage with a total debt of $81,668 and a second mortgage for $20,000, which property is in foreclosure; and his one third interest in 118-124 Forest Avenue valued at $300,000 subject to a mortgage for $225,000. There is a bank account maintained for this property with a balance of $6,000, one third of which is the defendant's interest. As previously noted, there is a blanket mortgage of $105,000 on both the Hattertown Road property and the Renchy Street property. Additionally, the defendant has IRA's totalling $5,416, a 1984 Chevy truck valued at $3,500, a 1973 Volkswagen bus valued at $750 and a checking account valued at $15.00. He has liabilities reported on his financial affidavit totalling $212,780.
At present, the defendant earns $20.00 per hour as a finish carpenter. In the past, he has held a real estate license, although he worked as a realtor for only one year, that with his brother Douglas and earned only one commission. He holds a federal firearms license and has traded firearms in the past. There has been no evidence of what he realized moneywise in the firearms business.
Both parties have submitted child support guideline worksheets. Plaintiff's worksheet is based upon the assumption of a forty hour work week for the defendant at $20.00 per hour for a gross annual wage income of $40,000. Defendant's worksheet is based upon what his counsel has described as "reality." His gross income is reported as $336.00 per week which includes $80.00 per week net income from Renchy Street rentals. It is, thus, including but $256 weekly wage income from Munson Builders. However, defendant's counsel concedes that the defendant's gross income from wages will improve in the future and that his earning CT Page 9186 capacity in the past has been demonstrated to be $25,000 to $35,000 per year.
The court finds that a figure half way in between or $30,000 per year is a fair and equitable figure considering the defendant's health, the weather and the difficulties of his attention deficit disorder. This amounts to a gross income of $600 per week for a thirty hour work week. The court finds that the defendant has demonstrated such an earning capacity in the past. Adding his net rental income from Renchy Street produces a gross weekly income of $680 per week. Deductions for income tax withholding (state and federal), social security and medicare would amount to $110.46 (assuming head of household and two exemptions).
Having considered the factors of §§ 46b-84 (c) and the provisions of § 46b-215b of the General Statutes, the court finds that it would be inequitable and inappropriate to apply the Child Support Guidelines in this case and deviates from the Child Support Guidelines in accordance with § 46b-215a-3 (b)(1)(B), the defendant's earning capacity. Applying the Child Support Guidelines to the defendant's reported net income, the figure for support to be paid by the defendant to the plaintiff is $113 per week. Based upon the defendant's earning capacity of $600 per week, net rental income of $80.00 per week and the plaintiff's net income of $185 per week, support in accordance with the guidelines to be paid by the defendant is $207 per week. The court finds an order of $200 per week is a fair and equitable amount by way of support.
At present, plaintiff is working but two days per week. It is not yet appropriate to apply an earning capacity analysis in her situation since the children still need her attention. The court concludes that it is not desirable for her to secure additional employment at this time.
The plaintiff seeks an order that the defendant's interest in the Renchy Street property be assigned to her pursuant to the provisions of § 46b-81 of the General Statutes. As previously noted, however, the defendant's interest in Renchy Street is being foreclosed. In view of the court's decision on the third party defendant's claim and considering the pending foreclosure action, the court concludes that the defendant has no equity in this property. This is also true of the defendant's interest in the Hattertown Road property. The defendant's interest in 118-124 CT Page 9187 Forest Avenue amounts to an equity interest of $25,000 plus his share of the bank account which is estimated at $2,000.
With regard to assignment of property, the Appellate Court in the case of Emanuelson v. Emanuelson, 26 Conn. App. 527, 530, 531
(1992) stated as follows:
 "General Statutes § 46b-81 (c) requires the trial court to evaluate certain factors before distributing the parties' assets in a marital dissolution action. Although the court must evaluate all the factors listed, it has broad discretion when applying the statutory factors to assign the parties' assets. O'Neill v. O'Neill, 13 Conn. App. 300, 312, 536 A.2d 978, cert. denied, 207 Conn. 806, 540 A.2d 374 (1988)."
The court in O'Neill v. O'Neill, supra, at page 311, stated as follows:
 "The purpose of a lump sum distribution as a property settlement is to make an equitable division of property. McPhea v. McPhea, 186 Conn. 167, 170, 440 A.2d 274
(1982). A court must, therefore, `unscramble' ownership of property in order to give each spouse what is equitably his or hers. Id. An equitable division of property upon divorce or dissolution envisions that full recognition by the courts will be given to the noneconomic contributions of both spouses. (Citations omitted.)
 A property division ought to accord value to those nonmonetary contributions of one spouse which enable the other spouse to devote substantial effort to paid employment which, in turn, enables the family to acquire tangible marital assets. The investment of human capital in homemaking has worth and should be evaluated in a property division incident to a dissolution of marriage. We hold, accordingly, that an equitable distribution of property should take into consideration the plaintiff's contributions to the marriage, including homemaking activities and primary caretaking responsibilities.
With regard to alimony, the Supreme Court has stated as follows: CT Page 9188
 To begin with, our alimony statute does not recognize an absolute right to alimony, General Statutes § 46b-82; Thomas v. Thomas, 159 Conn. 477, 487, 271 A.2d 42
(1970); `This court has reiterated time and again that awards of financial settlement ancillary to a marital dissolution rest in the sound discretion of the trial court.' (Citation omitted.) Although the court is required to consider the statutory criteria of length of marriage, causes for dissolution, the age, health, station in life, occupation, amount and sources of income, assets and opportunity for future acquisitions of assets of each of the parties, (citation omitted), no single criterion is preferred over all the others. In weighing the factors in a given case, the court is not required to give equal weight to each of the specified items. Nevertheless, it is rather obvious that in making financial determinations, the financial circumstances, both actual and potential, are entitled to great weight. Valente v. Valente, 180 Conn. 528, 530
(1980); Watson v. Watson, 221 Conn. 698, 710 (1992).
The court has considered all of the criteria of §§ 46b-81,46b-82, 46b-84, together with the provisions of §§ 46b-56,46b-56a, 46b-62 and 46b-215b of the General Statutes together with all the evidence and the case law. Since "[i]t would serve no useful function to require the trial court ritualistically to rehearse the statutory criteria that it has taken into account",Scherr v. Scherr, 183 Conn. 366, 368 (1981), this court will not recount those statutory criteria and the evidence, other than as has been previously stated. "The court is not obligated to make express findings on each of these statutory criteria." Weiman v.Weiman, 188 Conn. 232, 234 (1982).
The court, in addition to the foregoing findings, finds as follows:
1. There is the requisite jurisdiction.
2. The allegations of the first count of the amended complaint have been proved and are true.
3. The allegations of the second count of the amended complaint are found in favor of the defendant Calvin Munson.
4. There has been an irretrievable breakdown of the marriage. CT Page 9189
5. Neither party is at fault for the breakdown of the marriage.
6. The parties would not be able to accomplish "joint decision-making" within the meaning of § 46b-56a and sole custody of the minor children should be with the plaintiff.
7. At the time of trial, the defendant was twelve weeks in arrears on the pendente lite order for support. An arrearage is, therefore, found of $430 to July 17, 1997.
8. There has been no evidence regarding life insurance as requested by plaintiff in paragraph 6 of the plaintiff's claims for relief and by the defendant in paragraph 6 of the defendant's claims for relief, see Michel v. Michel, 31 Conn. App. 338 (1993), so no orders are entered in this regard.
9. It would be inequitable and inappropriate to apply the Child Support Guidelines in this case, and the court, therefore, deviates from the Child Support Guidelines. Based upon the parties' financial affidavit, the guideline figure is $113 per week. A fair and equitable amount by way of support in view of the defendant's earning capacity is $200 per week.
10. The court deviates from the arrearage guideline deviation criteria pursuant to § 46b-215a-5 (b)(1) since the support order was affected by the application of a deviation criteria. A fair and equitable amount by way of payment on the arrearage is $20.00 per week.
The court enters the following orders:
1. A decree of dissolution of the marriage of the parties shall enter on the ground of irretrievable breakdown of the marriage.
2. Judgment shall enter in favor of the third party defendant Calvin Munson on the second count of the plaintiff's complaint.
3. Sole custody of the two minor children shall be with the plaintiff. The defendant shall have reasonable visitation contingent upon all firearms being locked at all times and his maintaining a suitable clean and safe environment when they are in his home. CT Page 9190
4. The defendant shall satisfactorily complete a parenting education program within three (3) months of the date of this decision.
5. The defendant shall designate a third person to examine his home monthly to determine its safety for the children and report his or her observations to the plaintiff.
6. The defendant shall pay child support to the plaintiff in the sum of Two Hundred ($200) Dollars per week based upon an earning capacity of $600 gross earnings per week, $570 per week net income exclusive of firearm sales.
7. The defendant shall pay Twenty ($20.00) Dollars per week by way of payment on the arrearage of $430 plus such additional arrearage as may have accrued from July 17, 1997 to the date hereof. An immediate order for wage withholding shall enter to secure the payments in paragraphs 6 and 7 hereof.
8. The defendant shall provide health insurance for the children as available to him through his employment and shall in addition pay one-half of any uninsured medical, dental, psychiatric and orthodontic expenses of the children. The plaintiff shall also provide health insurance for the children as available to her through her employment which insurance shall be secondary unless provided to her without cost or at a lower cost than paid by the defendant, in which case the plaintiff shall provide the insurance for the children and she shall also pay one-half of the uninsured medical, dental, psychiatric and orthodontic expenses of the children. The plaintiff shall have the benefit of the provisions of § 46b-84 (d) of the General Statutes.
9. The defendant shall cooperate with the plaintiff so that she may obtain medical insurance coverage under the defendant's medical insurance plan pursuant to § 38a-538 of the General Statutes.
10. The plaintiff shall be entitled to the dependency exemption for tax purposes for the younger child, Caitlin Munson, and the defendant shall be entitled to the dependency exemption for tax purposes of the older child, James Wilken Munson, Jr.
11. The defendant shall pay the plaintiff $1.00 per year by way CT Page 9191 of alimony until the youngest child reaches the age of eighteen (18) years or if not finished the twelfth grade, until he finishes the twelfth grade or reaches the age of nineteen (19), whichever first occurs.
12. Pursuant to the provisions of § 46b-81 (a), title to the defendant's interest in the real property known as 118-124 Forest Avenue, Fairfield, together with the defendant's interest in the bank account maintained for the operation of this property shall pass to the plaintiff without any further act of the defendant as the proper mode to carry this part of the decree into effect. The plaintiff shall be responsible for one third of the mortgage upon such property and shall indemnify and hold harmless the defendant from any claim or demand thereon.
13. The defendant shall transfer to the plaintiff's IRA account the sum of Three Thousand ($3,000) dollars from his IRA account. Any tax consequences of the transfer or subsequent withdrawal shall be the responsibility of the plaintiff.
14. The defendant shall retain the real property at 46 Renchy Street in Fairfield and the real property at 421 Hattertown Road in Monroe, free from any claim or demand by the plaintiff. The defendant shall be wholly responsible for all debts and obligations upon said properties including the $105,000 blanket mortgage to Calvin Munson and the judgment lien in favor of People's Bank and shall indemnify and hold harmless the plaintiff from any claim or demand thereon.
15. The plaintiff shall retain the real property at 15 Stowe Street, Milford, free from any claim or demand by the defendant. The plaintiff shall be wholly responsible for all debts and obligations upon said property and shall indemnify and hold harmless the defendant from any claim or demand thereon.
16. The 1994 Chevy Truck, the 1973 Volkswagen bus, the balance of the defendant's IRA and the Fleet Bank checking account shall be the defendant's, free of any claim or demand by the plaintiff.
17. The bank accounts noted in the plaintiff's financial affidavit together with her IRA account shall be wholly hers, free of any claim or demand by the defendant. CT Page 9192
18. The defendant shall be wholly responsible for those liabilities reported in his financial affidavit and shall indemnify and hold harmless the plaintiff from any claim or demand thereon.
19. The plaintiff shall be wholly responsible for the liabilities reported in her financial affidavit and shall indemnify and hold harmless the defendant from any claim or demand thereon.
20. The tangible personal property in the plaintiff's possession shall be wholly hers, free from any claim or demand by the defendant except for the "family bible", which shall be returned to the defendant.
21. The tangible personal property in the defendant's possession shall be wholly his free from any claim or demand by the plaintiff except for the following items which shall be the plaintiff's and which shall be made available to her for removal from the Hattertown Road property at a time and date convenient to her: electric chord organ, kiln, brass bumper, lamp shade given to her by her mother, and her personal belongings including clothing, jewelry, and possessions that were hers prior to the parties' marriage. The foregoing itemization of tangible personal property shall belong to the plaintiff free of any claim or demand by the defendant.
22. The defendant shall deliver to the plaintiff all of the intimate pictures taken of her shortly after the marriage together with all copies and all negatives. Failure to comply with this provision may result in the defendant being found in contempt and punished therefore.
23. Each party shall pay her or his own attorney's fees.
Orders shall enter in accordance with the foregoing.
EDGAR W. BASSICK, III, JUDGE